THE LUMAGHI COAL COMPANY, Plaintiff in Error, *vs.*
THE INDUSTRIAL COMMISSION *et al.*—(ALFRED SUD-
BRING, Defendant in Error.)

*Opinion filed June 18, 1925—Rehearing denied October 9, 1925.*

1. WORKMEN'S COMPENSATION—*when an employee, in violating
rule, departs from sphere of employment.* A mine examiner goes
outside of the reasonable sphere of his employment where he will-
fully violates a rule of the company which forbids mine examin-
ers to use the mine's electric motors in going from place to place
in the mine, and an injury received by him while attempting to
operate a motor after he had been told not to do so and had been
furnished means of making the trip in a safer manner does not
arise out of the employment. (*Sesser Coal Co.* v. *Industrial Com.*
296 Ill. 11, distinguished.)

2. SAME—*accident must result from risk incident to the employ-
ment.* An employer is not liable for every accidental injury which
may happen to an employee during his employment but the accident
must result from a risk which belongs to or is connected with what
a workman has to do in fulfilling his contract of service, and the
employer is not liable where the employee voluntarily exposes him-
self to a danger which is not one arising from his employment.

WRIT OF ERROR to the Circuit Court of Madison county;
the Hon. J. F. GILLHAM, Judge, presiding.

WILLIAM E. WHEELER, (MARTIN F. OEHMKE, and
T. I. McKNIGHT, of counsel,) for plaintiff in error.

W. J. MACDONALD, (A. W. KERR, of counsel,) for de-
fendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

Alfred Sudbring, Harry Ballard and Thomas Robinson
were employed by the Lumaghi Coal Company in the capac-
ity of mine examiners. Their duties were to examine the
mine at night and do such necessary repair work as would
make the mine safe for coal miners to work in. They used
a mule and coal car when their work required. The coal

mined was brought from the face to the parting in cars drawn by mules. There they were formed in trains of about seven cars each and hauled to the bottom of the shaft by electric motors. The motors were stored at night in a place prepared for that purpose, and were not by the rules permitted to be used during the night time. They were operated, when in use, by motormen employed for that purpose. The mine examiners had nothing to do with operating the motors. On the night of December 19, 1922, Sudbring, after examining his section of the mine, was then to go to the section examined by Ballard and Robinson and help them put up a brattice door, or regulator, used to regulate the air in the entries. The place where the regulator was located was about a mile from the bottom of the shaft. When Sudbring completed the work in his section of the mine he went to the pit where the motors were stored, which was about 600 feet from the bottom of the shaft. The motors were operated by batteries. Sudbring undertook to take a motor out of the pit for the purpose of riding on it to the place where he was to help Ballard and Robinson. In starting it up the motor ran over him and cut off his left leg. He made application for compensation for temporary total disability and the complete loss of the use of one leg. The arbitrator and commission allowed the compensation, and the award was on review by the circuit court confirmed. This court granted a writ of error to review the award.

There is but one question to be determined. Plaintiff in error contends the accident did not arise out of Sudbring's employment and he was therefore not entitled to recover compensation.

There is not a great deal of conflict in the testimony. The rules of plaintiff in error forbade the use of the motors by anyone except those who were employed to operate them and who did nothing else. It was a violation of the rules for mine examiners to use them, and the proof is that they

were dangerous to persons who were not familiar with their operation, and also dangerous to the company's property in the hands of an inexperienced person. Mine examiners were furnished mules and cars when they had use for them. Sudbring had to go about a mile to help Ballard and Robinson work on the regulator, and testified he went to the pit where the motors were stored for the purpose of taking out a motor to carry him in making the trip. In attempting to start it, it threw him over and cut off his leg. He testified the place where the motor was stored was not a place where he was supposed to work. His purpose in taking the motor was to make the trip quicker than he could otherwise. He further testified he had used a motor four or five times before he was injured and that he had seen one of the other examiners use a motor about three times. He testified neither Kiser, the mine superintendent, nor Adamson, the mine manager, had ever told him not to use the motors. Ballard testified his orders were not to use the motors but that he did use them sometimes. He had used a motor about four times. He never saw any other examiner use them. No mine manager ever saw the witness use the motor. Both the mine superintendent and mine manager instructed witness never to use the motors. Kiser, the mine superintendent, testified the motor attempted to be used by Sudbring weighed five and one-half tons and was run by storage batteries. It was operated by a controller and brakes to control its movements. The only knowledge he ever had that any night man used the motors was the information from the night boss that the motors were running low in the day time, and he suspected they were being used by someone at night. That occurred several weeks before the accident to Sudbring. Men were employed specially to operate the motors and no one else was permitted to use them. At night the motors were stored in a pit in the motor shed off from the entry. A few weeks before Sudbring's accident Kiser called him in and told him the

night boss suspected he was using the motors. He told Sudbring he must not use them. Adamson, the mine manager, testified the mine examiners had no right to use the motors; that in November before the accident to Sudbring. he heard the superintendent, Kiser, tell Sudbring he did not want any of the examiners to use any of his motors; that he had been told it was suspected they were using them, and they must not do so. Sudbring denied he had been using them. The witness testified the motors were dangerous for use by an inexperienced man. Alfred Esterlein, the mine electrician, testified he heard Kiser, the superintendent, tell Sudbring, before the injury, not to use the motors, and that if he did use them he would discharge him. He testified a man must be familiar with the motor to operate it with safety.

The foregoing is, we believe, the substance of the most material testimony. It will be seen the decided weight of the testimony is that Sudbring was positively instructed not to use the motors. It cannot be reasonably claimed that there was any custom, known to the superintendent or manager, for the mine examiners to use the motors. They were used at night, if at all, and no man in authority about the mines had ever seen them in use by the mine examiners or anyone else except those whose business it was to use them. The run-down condition of the motors in the daytime caused the superintendent and mine manager to suspect they were used at night, but none of them ever saw them used, and two mine examiners (Sudbring being one of them) were positively told they must not use them. They were not used very frequently by the mine examiners.

It is the contention of plaintiff in error that when Sudbring went to the pit or shed where the motors were stored, which he admitted was a place where he was not supposed to go, and undertook to operate a motor for his own purposes, which he was forbidden to operate, he stepped outside the duties for which he was employed and voluntarily in-

curred a danger which was not an incident to any of the duties of the employment, and the accident was therefore not an incident of his employment. Defendant in error contends that at most Sudbring violated a rule of the company, which did not take him out of his employment and constituted only contributory negligence.

It is true an employee may violate a rule of his employer without necessarily leaving the sphere of his employment. He may be guilty of contributory negligence in violating the rule, which would constitute no bar to a recovery of compensation, for contributory negligence is no defense to a claim for compensation. In this case Sudbring did more than simply violate a rule of the employer. By his own testimony he admits he left the place where his duties required him to go and went to the motor shed, where, he testified, he was not supposed to go, and in addition undertook to operate a dangerous machine, which both the rules of the employer and instructions given him by the mine superintendent forbade him to use or attempt to operate. He testified he put up the mule which was furnished him for the performance of his duties and then went to the motor pit for the purpose of taking out a motor to make a trip of about a mile to help the other mine examiners perform a piece of work, and that his purpose in attempting to take the motor out was to enable him to make the trip in a shorter time. He chose to violate the rule of the company and the positive instructions of its superintendent, and to voluntarily, without the knowledge of the master, engage in a hazardous method of taking him from one part of the mine to another when his duties required him to make the trip in a safer manner. In doing so he voluntarily went outside of the reasonable sphere of his employment and put himself beyond the protection of the master's implied undertaking.

To entitle an employee to compensation the injury must occur in the course of and arise out of the employment.

We have repeatedly held the accident must result from a risk which belongs to or is connected with what a workman has to do in fulfilling his contract of service. Where he incurs a danger of his own choosing, outside of any reasonable exercise of his employment, the act is not an incident to the employment. The employer is not liable for every accidental injury which may happen to an employee during his employment. The employer is not liable where the employee exposes himself to a danger which is not one arising from the employee's employment. (*Dietzen Co.* v. *Industrial Board,* 279 Ill. 11; *Terminal Railroad Ass'n* v. *Industrial Com.* 309 id. 203; *Boorde* v. *Industrial Com.* 310 id. 62; *United States Fuel Co.* v. *Industrial Com.* 310 id. 85; *United Disposal Co.* v. *Industrial Com.* 291 id. 480; *Adams & Westlake Co.* v. *Industrial Com.* 292 id. 590; *West Side Coal Co.* v. *Industrial Com.* 291 id. 301; *Nelson Construction Co.* v. *Industrial Com.* 286 id. 632.) If those cases are sound (and we believe they are) plaintiff in error is not liable for compensation.

*Sesser Coal Co.* v. *Industrial Com.* 296 Ill. 11, much relied on by defendant in error, does not support the claim of liability. In that case there was a rule forbidding anyone but motormen and truck-riders from riding the motors. The court said the evidence showed it was a mere paper rule, never enforced; that mine examiners had been for two years before the accident using the motors and such use had never been forbidden by the employer. None of the other cases in this State lay down any different rule from that announced in the *Dietzen Co. case, supra.* All our subsequent decisions where the question was involved adhere to that case.

Sudbring admits the discharge of his duties did not require him to use a motor or to go to the place where the motors were. He had been told he must not use them and had been threatened with discharge if he disobeyed instructions. They were dangerous machines if used by an inex-

perienced man.   He put up his mule and car which were furnished him for use in performing his duties.   He did not attempt to use the motor for any other purpose than to enable him to ride to the place where he wanted to go, quicker than he could go by driving the mule or on foot. No duty of his employment required this, and it seems clear that for his own convenience, and outside of any duty expected or required of him, he incurred a danger of his own choosing.   In doing so he placed himself beyond the employer's implied undertaking.   The accident did not arise out of Sudbring's employment.

The judgment of the circuit court is reversed and the award set aside.

*Judgment reversed and award set aside.*