(No. 21108.—

The M. P. Gustafson Company, Plaintiff in Error, vs. The Industrial Commission et al.—(Mary Peck, Defendant in Error.)

*Opinion filed February 19, 1932—Rehearing denied April 12, 1932.*

GEORGE C. BLISS, for plaintiff in error.

J. S. COOK, for defendant in error.

Mr. JUSTICE ORR delivered the opinion of the court:

In this case a writ of error was allowed to review a judgment of the circuit court of Cook county sustaining an award by the Industrial Commission under the Workmen's Compensation act. Prior to the judgment of the circuit court the arbitrator and the Industrial Commission had both found that the deceased, John Peck, had sustained accidental injuries arising out of and in the course of his employment and had ordered the plaintiff in error to pay to the widow, for herself and the support of her minor child, the sum of $15 per week for a period of 280 weeks. It is contended by the plaintiff in error that Peck's injury and resultant death did not arise out of and in the course of his employment but resulted from a violation of the instructions of his employer. No other questions are presented.

Peck was fatally injured on the afternoon of April 25, 1930, while employed by the plaintiff in error in and about the operation of a steam crane. He had been working for the plaintiff in error for seventeen years and for eight years had been assisting in the operation of gasoline, electric and steam shovels, at times himself operating the electric crane. His duties took him all over the railroad yard, where he pulled switches, cleaned cars, shoveled sand, coal and other material, and worked as general handy man around the

crane. This crane consisted of a steel boom 125 feet long, which revolved upon a turn-table, and, with a cab, was mounted on a short railroad flat-car of special design. When this boom was swung to the right the entire cab resting on the turn-table would swing to the left, or to the opposite side of the car. A fellow-employee named Mattson was the engineer operating the crane at the time of the accident. He was inside the cab on the right side, facing the front. The crane moved on the track at a speed of about one mile an hour, or slower than a man ordinarily walks. With its boom extending directly in front of it the crane was slowly proceeding south toward a coal pile. Peck threw the switch to enable the crane to proceed down the proper track. The coal pile, according to the evidence, was only 125 feet from the switch, or a distance equal to the length of the boom. The place where the accident happened was about 75 or 100 feet from the switch. Mattson, the engineer on the crane, testified the last he saw of Peck before he was injured was when Peck threw the switch, at which time he was 75 or 100 feet away from the crane. Upon approaching the coal pile Mattson started the machinery in motion, which moved the boom around to the right, or west, while the crane was still traveling south on the track. He felt a jar after he had turned the boom "a little more than a quarter of the way around." He testified that as he could not see anything on the left side of the crane, that being his "blind side," he immediately stopped the crane, got off, and found Peck lying on the ground on the east side of the flat-car, opposite its center. Mattson testified that he did not see Peck ride on the crane or on the truck, nor had he at any previous time ever seen him ride on either the truck or crane. There were no eye-witnesses to the accident, and Peck died from his injuries the next day.

It is admitted that Peck was fatally injured by the crane and that his duties required him to assist in its operation.

His work required him at all times to be in the immediate vicinity of the crane, about the shovel, walking past the moving crane, the swinging boom and turn-table. The evidence shows that the boom swings from one side to the other much more rapidly than the car travels on the track. Only three witnesses testified: Gustafson, the employer, Mattson, the engineer, and a yard manager named Goyette. None of these saw the accident, and Mattson, the principal witness, was the only one who was near enough to have any idea of how it happened. The position of Peck's body, when found, tends to show that he was not on the car, as he was lying on the ground, two feet east of the track, when Mattson found him. If Peck had been sitting upon the car when the cab swung around on the turn-table, it would be reasonable to assume that he should have been found wedged and caught between the cab on the turn-table and the high part of the flat-car against which it was claimed he was sitting. On the other hand, it is just as reasonable to suppose that the rear end of the revolving cab caught him unawares as he walked on the track alongside the flat car. The terrific impact of such a fast-moving and ponderous body could easily have caused his injury and death. Further, Mattson testified that he felt an impact as if the crane had struck something when it had turned slightly more than a quarter of the way around. This also would tend to refute the theory that Peck was riding on the flat-car and would indicate that he was knocked over while walking along the track beside the crane, as he was always accustomed to do. Mattson twice stated on the witness stand that Peck had said "the turn-table got me," and nothing else. Later, at the suggestion of plaintiff in error's attorney, and over objections, he was allowed to enlarge upon this, after refreshing his memory from a signed statement prepared by his employer, by saying that Peck said he was sitting on the crane. It is evident that under the circumstances this later statement did not carry much

weight with the arbitrator or Industrial Commission. It must be remembered that Mattson was still in the employ of the plaintiff in error and had been charged in the proceeding with mishandling the crane which caused Peck's death. The later statement elaborating upon Peck's dying words did not come to him as he voluntarily and positively answered two previous questions of the same character earlier in the hearing. On such a showing we are not inclined to disturb the findings of the arbitrator and the Industrial Commission, as it cannot be said that the award was contrary to the manifest weight of the evidence. This court has repeatedly held that it will not reverse the finding of the commission unless the award is shown to be clearly contrary to the manifest weight of the evidence. *Donk Bros. Coal Co.* v. *Industrial Com.* 325 Ill. 193; *Cuneo Press Co.* v. *Industrial Com.* 341 id. 569.

Under all the circumstances it must be apparent that Peck's injury did not arise out of any extraordinary risk indirectly connected with his work but was an ordinary risk incidental to his employment. A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in the fulfillment of his contract of service, and it may be incidental to the employment when it is either an ordinary risk directly connected with the employment, or an extraordinary risk which is only indirectly connected therewith. (*Landon* v. *Industrial Com.* 341 Ill. 51; *Boorde* v. *Industrial Com.* 310 id. 62.) An injury arises out of the employment where it is apparent to the rational mind, upon consideration of all the circumstances, that there is a causal connection between the condition under which the work was required to be done and the resulting injury. (*Landon* v. *Industrial Com. supra; Schweiss* v. *Industrial Com.* 292 Ill. 90.) Under these decisions it seems immaterial whether Peck was injured by the cab on the turn-table while sitting upon the flat-car, as plaintiff in error contends, or otherwise. His work was

intimately connected with the operation of the crane and his duties brought him within its immediate vicinity at the time of his injury. Even if the injury was caused on account of the negligent manner in which Peck was doing his work, this court has repeatedly held that such an injury is not beyond the scope of the employment and that negligence is not a defense which may be used by the employer to avoid the payment of compensation. (*Keeran* v. *Peoria, Bloomington and Champaign Traction Co.* 277 Ill. 413; *Alexander* v. *Industrial Board,* 281 id. 201; *Mississippi River Power Co.* v. *Industrial Com.* 289 id. 353.) In this case the record clearly shows that Peck was injured while either riding on or walking alongside the flat-car on his way to the coal pile, where his next task took him. He was therefore obviously engaged in his employer's business at a time when and at a place where his duties required him to be.

It is further contended, however, that Peck's injury arose outside of the scope of his employment in case he was riding on the car, as in so doing he was violating the instructions of his employer. The proof in the record does not support this contention. While the employer testified that he had posted instructions several years previously warning his employees not to ride on the cranes, yet there is no proof of any recent order to that effect. If such an order existed, it was honored more by its breach than by its observance. Goyette, the yardmaster employed by the plaintiff in error, testified that he had repeatedly seen different employees (but not Peck) ride upon the different cranes and that none of them had been discharged. A similar condition existed in *Sesser Coal Co.* v. *Industrial Com.* 296 Ill. 11, where there was a rule forbidding anyone but motormen and truck drivers from riding the motors. This court there said: "Whatever rule there may have been with respect to the use of the motors, it was a mere paper rule and never enforced, * * * and in view of the usual practice it cannot be said that Ogilvie met his death

in consequence of a violation of a rule of his employer." The evidence here shows that at the time of his injury Peck was merely going about his usual work and that no orders or rules were in force at that time directing employees not to ride upon the cranes. The printed instructions put up by Gustafson five years earlier were kept up for one year, only, and there had been no rules posted for four years previous to the accident. That employees were freely permitted to ride on the cranes appears in the testimony of both Goyette and Mattson. Under these circumstances the employee may recover compensation. *Sesser Coal Co.* v. *Industrial Com. supra; Lumaghi Coal Co.* v. *Industrial Com.* 318 Ill. 151.

The judgment of the circuit court sustaining the award of the Industrial Commission is therefore affirmed.

*Judgment affirmed.*