BECK v. COMMERCIAL DRIVEAWAY, INC.

CALDER v. SAME.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—ACCI-
DENTAL INJURY—MONOXIDE GAS POISONING.
   In proceedings under workmen's compensation act, conclusion of
   department of labor and industry that decedents died as result
   of breathing carbon monoxide gas generated from running
   motor and carried through defective exhaust heater into cab
   where they were sleeping in nighttime, and that there was
   accidental injury, *held*, justified by established facts and cir-
   cumstances.

2. SAME—CUSTOMS AND USAGES—COMPENSABLE ACCIDENT.
   Where custom of drivers engaged in driveaway of sleeping in
   cars at night was known to and acquiesced in by employer,
   their accidental death from monoxide gas while so sleeping
   arose out of and in course of their employment.

3. SAME—VIOLATION OF RULE AS DEFENSE TO COMPENSATION CLAIM.
   If employer insists upon defense of violation of rule by em-
   ployee as means of defeating compensation claim, he must
   show that such rule was made, enforced, and intentionally vio-
   lated.

4. SAME—HABITUAL VIOLATION OF RULE—WILFUL MISCONDUCT.
   Where rule against drivers sleeping in cab of motor vehicle with
   motor running unless windows were left open, if promulgated,
   was not enforced, and fact that it was generally disregarded
   was known to employer, latter may not defeat compensation
   claim for death of drivers from monoxide gas while sleeping
   in cab on ground that they violated said rule and were there-
   fore guilty of intentional and wilful misconduct.

Appeal from Department of Labor and Industry.
Submitted October 27, 1932. (Docket Nos. 70, 71,
Calendar Nos. 36,752, 36,753.) Decided December
6, 1932.

On injury from fumes or gases as accident or occupational disease
within the meaning of the compensation statutes, see annotation in
6 A. L. R. 1466; 23 A. L. R. 335.

As to what constitutes serious and wilful misconduct of employee,
see annotation in L. R. A. 1916A, 75, 243, 355; L. R. A. 1917D,
133; 4 A. L. R. 116.

Luella M. Beck and another and Margaret Loraine Calder presented their claims against C. & J. Commercial Driveaway, Inc., employer, and Union Indemnity Company, insurer, for the accidental death of Ronald Beck and Loy Calder while in defendant's employ. Awards for plaintiffs. Cases consolidated for appeal. Defendants appeal. Affirmed.

*Wm. C. Brown,* for plaintiffs.

*P. L. Sawyer* (*Butzel, Levin & Winston* and *Chris M. Youngjohn,* of counsel), for defendants.

McDONALD, J. The defendants review by certiorari to the department of labor and industry an award for compensation to Luella M. Beck and Margaret Loraine Calder for accidental injuries resulting in the deaths of their husbands, Ronald L. Beck and Loy B. Calder.

The record presents the two cases involving the same facts. They have been consolidated by stipulation and will be disposed of in one opinion.

The plaintiffs' decedents were drivers for the C. & J. Commercial Driveaway, Inc., a corporation engaged in the business of transporting automobiles to and from various cities in the United States. At the time in question the decedents, Beck and Calder, were employed with other men to drive a fleet of 25 used Yellow Taxi Cabs from Chicago, Illinois, to Washington, D. C. The drivers were allowed to park where night overtook them and to sleep in the rear of their cabs. On this trip to Washington, they stopped for the night at a barbecue settlement near Romney, West Virginia. They parked their cars beside the highway. The decedents, Beck and Cal-

der, went to sleep in the same cab. In the morning they were found dead; and their death is claimed to have been caused by carbon monoxide from the exhaust of the motor. The night was cold, and it is thought the men kept the motor running in order to keep warm.

In adjusting claims for compensation, the defendants denied liability on the ground, first, that the injury was not accidental; second, that it did not arise out of and in the course of the employment; and, third, that it was due to intentional and wilful misconduct. The commission found against the defendants on all three defenses, and awarded compensation. As cause for appeal defendants claim:

1. That there was no evidence of an accidental injury.

When the men were found in the morning, Dr. Easton of Romney, West Virginia, was called. He examined the bodies, and on the hearing before the commissioner testified:

"*Q.* In your opinion, doctor, as a physician, from all the circumstances you have above described, what caused the death of these two men?

"*A.* They were overcome by monoxide gas coming into the rear of the compartment of the taxicab in which these men were sleeping, through a defective heater, and both, in my opinion, were dead when discovered. * * *

"*Q.* Doctor, you have stated that these men came to their deaths by inhaling carbon monoxide gas. Now, will you state why you are of that opinion?

"*A.* Well, we examined the particular taxicab, No. 13, in the line where both men were found dead, and we found the heater in the rear compartment of this cab was defective, and it leaked fumes from the exhaust to the rear compartment where these men were. * * *

"*Q*. Was or was not there any physical conditions that would show that Calder died from carbon monoxide?  *  *  *

"*A*. There was a pinkish tinge to the skin that is peculiar to monoxide poisoning. In my opinion, this condition is peculiar to death from monoxide poisoning alone, that is, the condition of the skin."

This testimony was a sufficient basis for the conclusion of the commission that the decedents died as a result of breathing carbon monoxide gas generated from a running motor and carried through a defective exhaust into the rear of the cab. It is the only reasonable inference to be drawn from the established facts and circumstances. It sufficiently shows an accidental injury.

2. That the injury did not arise out of and in the course of their employment.

This fleet of cars was in charge of a foreman, Mr. Lane, but he was not present on the night of the accident. He had motor trouble with the cab he was driving and had fallen behind the others. When night came on he was 50 miles in the rear. At about 10 o'clock he sent word to them to remain at the barbecue station until he arrived in the morning. Mr. McKinly, president of the defendant company, testified that the drivers were responsible for the cars they were driving until delivered at Washington; and that it was their duty to remain in charge of them when not being driven unless excused by the foreman. On the night in question, the men received no instructions from the foreman except to stay where they were until morning. They remained in charge of their cars and slept in them, a custom known to and acquiesced in by their employer. These facts show that when this accident occurred the decedents were not off duty. They were not actually driving but were in possession

of their employer's property charged with the duty of protecting it until the arrival of the foreman in the morning. They did not leave the field of their employment but remained on duty performing a service for their employer. While thus engaged they were injured. The injury arose out of and in the course of their employment. See *Haller* v. *City of Lansing*, 195 Mich. 753 (L. R. A. 1917 E, 324).

3. Was their injury and death due to intentional and wilful misconduct?

It was contended by the defendant that the drivers were instructed not to sleep in their cabs with the motors running unless the windows were left open. There was no rule to that effect posted in the cabs or in the employer's office where the men were accustomed to assemble. The instructions were verbal and were announced to the drivers when the weather became cold. The record does not show that Beck and Calder were present on any occasion when such instructions were given. But, assuming that they knew about the rule, they knew that it was generally disregarded by all of the drivers, which fact was also known to the employer. To be effective as a means for defeating compensation, the rule must be enforced with diligence. In reference to this rule the commission said:

"There is no evidence that such a ruling was promulgated in the regular way, and there is plenty of evidence if such a rule were promulgated, it was not enforced. Officers of the company did the same thing, and supervising employees on this trip did likewise. Several of the employees were ill in the morning on this trip when these two men were found dead. If the employer insists upon this defense as a means of defeating a compensation claim, he must show that such a rule was made, enforced,

and intentionally violated. He cannot wink at his own rule. *Rayner* v. *Sligh Furniture Co.*, 180 Mich. 168 (L. R. A. 1916 A, 22, 4 N. C. C. A. 851, Ann. Cas. 1916 A, 386); *Detwiler* v. *Consumers Power Co.*, 252 Mich. 79.''

We agree with the finding of the commission that the decedents' injury was not due to intentional and wilful misconduct.

The award in both cases is affirmed, with costs to the plaintiffs.

CLARK, C. J., and POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred. BUTZEL, J., did not sit.

