ELMER RAGLE *v.* STATE COMPENSATION COMMISSIONER *et al.*

(No. 9411)

Submitted February 9, 1943. Decided March 16, 1943.

*Mahan, Bacon & White,* for appellant.
*Hillis Townsend,* for claimant.

Rose, Judge:

This appeal was awarded to New River Company, a coal mining corporation, from the action of the Workmen's Compensation Appeal Board affirming an order made by the Compensation Commissioner in a proceeding in which Elmer Ragle, an employee of the appellant, was prosecuting a claim for compensation for alleged injuries received in his employment. By that order, the Commissioner specifically found and held that the injury which was the basis of the claim "was not the result of wilful violation of the claimant of rules, or the result of wilful misconduct", awarded compensation on a temporary total basis for a fixed period at eight dollars per week, and continued the case "for the consideration of medical reports to be hereafter submitted."

The factual situation appears to be clearly and fully established. The claimant was a brakeman on an electric motor used for moving, distributing and hauling mine cars inside the mine, an occupation at which he had worked for eight or ten years. He had been employed by the New River Company at another mine for about two years, five or six years before his present employment. Immediately before his being re-employed by the appellant his work had been at what is called "the Helen mine" operated by another company. He was engaged by the appellant and began work on Friday, December 5, 1941. He did not work on either Saturday or Sunday, but met with the accident while working on Monday, December 8th.

At the time of his hiring, he receipted for the employer's book of "Safety Rules". Included in these rules, under the heading of "Rules for Haulage", are these: "Rule 3. Cars and locomotives shall be stopped before coupling or uncoupling." "Rule 15. No person shall be permitted to ride on the front end, or on top of any motor being headed in or out of the mines." This set of rules bears the following indorsement:

"Approved:

The above rules insofar as they may be found reasonable and lawful are approved and their enforcement and obedience will be insisted upon.

A. G. Mathews,
*State Compensation Commissioner."*

The section foreman who put the claimant to work made this statement in his testimony: "I told him he must not ride the front end of the motor, that that was against our rules, and he couldn't stay with New River Company and do that, they couldn't ride the front end of gathering motor." He further stated that on the Friday, the first day of the claimant's employment, he observed him "on the front end of the motor", and that thereupon, he "stopped the motorman, had him stop the motor and asked him (claimant) what he was doing on there and he said where he worked he rode the front end of the motor and I said, 'You can't do that and stay here, that is against the rules.' I asked him where he had been working and he said Helen, and I said, 'You can't do it here', and give him full instructions again." The foreman did not inflict any penalty for this violation, giving the following explanation: "Well, he was a new man. I told him he was a new man and as it was his first time, I didn't want to be mean, wouldn't penalize him, but not to let me know or catch him on the front end of that motor any more, or I would penalize him, and he promised me he wouldn't ride on the head end no more." The mine foreman testified that the claimant assured him that he had worked for this company before, and was familiar with the haulage rules, and that he never rode the front end of the motor or "trips", and that on Monday, the day of the accident, "I told him the section foreman reported to me that on Friday evening after work that he had caught him on the front end of the motor and I told him not to never do that any more and told the motor runner if he got on the front end of the motor again to bring him back this way until he met a foreman." The claimant admits that he was given the book of safety rules

by the superintendent, and was familiar with them, and that the section foreman told him he "mustn't ride the front end, if they caught me they would lay me off"; that the New River Company had in force a rule against riding on top or on the front of the motor, and against coupling or uncoupling cars while the cars or motor were in motion; but says that in the Helen mine that riding the front end of the motor was permitted. Witnesses for the employer say that riding the front end of a motor is a hazardous practice, and that the rule against it is reasonable. The mine foreman was asked this question: "Mr. Johnson, would you say that all of your company rules are strictly enforced to the letter", to which he replied, "I don't believe they are." Another employee was asked if he had ever heard of any brakeman being laid off for doing the same thing that Mr. Ragle was doing, to which he replied, "No sir, I haven't."

The injury occurred as an empty coal car was being pushed into the working place of Joe Pachuta, a loader. The car had dropped off the rail and had been replaced by the claimant, who then got into the empty. The motorman, the loader and another workman testified that, as the empty neared the place where it should be stopped, the claimant crawled over the rear of the empty, while it was moving, onto the bumper of the motor, and was in the act of removing the coupling pin when some part of his body was raised too high and struck the roof of the mine, causing him to be "rolled" between the roof and the motor. Upon his crying out, the motor was reversed, thereby releasing him. Serious injury to the claimant resulted.

The claimant, in his affidavit given to the department's investigator, explained the accident thus: "Well, I tell you after I rode the empty up to the place, the coal loader scotched it up. I crawled over the top of the empty to pull the pin to uncouple the car from the motor. The motor didn't pull out then—the motorman was talking to the coal loader, after they finished talking he pulled out.

I was raised up a little too high and caught my right hip on the roof, which caused me to be drug up on top of the motor. I hollered at him right low to stop, because my wind was shut off, he then reversed the motor and shoved me back through the same place where I was caught." But in his deposition on the formal hearing, held after protest, the claimant says: "Well, after I got pretty near to the place, I crawled over the top of the empty, back towards the motor and grabbed pins and got over on bumper of the motor and raised up too high and that is when it shoved me against the top and caught hold of me. I still had hold of the pin, but never did get the car uncoupled, see." And further, that he "Was crawling over the top of the car, over on the bumper of the car when I got hurt, * * *."

On this showing, the Commissioner held that the claimant was not barred by Code, 23-4-2, which reads as follows:

"Notwithstanding anything hereinbefore or hereinafter contained, no employee or dependent of any employee shall be entitled to receive any sum from the workmen's compensation fund, or to direct compensation from any employer making the election and receiving the permission mentioned in section nine, article two of this chapter, or otherwise under the provisions of this chapter, on account of any personal injury to or death of any employee caused by a self-inflicted injury, wilful misconduct, wilful disobedience to such rules and regulations as may be adopted by the employer and approved by the commissioner and which rules and regulations have been and are kept posted in conspicuous places in and about the work, * * *."

In brief and in argument here of counsel for the claimant, with much sound reason, it is vigorously argued that the company rules, by reason of the character of approval thereof by the Commissioner, have never been in effect. We are much concerned with what seems to be the conditional and qualified approval shown by the Commissioner's certificate. This form of approval appears to have

been in general use for a considerable time, and has been frequently challenged. Is an approval of rules "insofar as they may be found reasonable and lawful", such as is contemplated by the statute, or any approval whatever? As yet, no case in this Court has clearly turned on this question, and we shall not answer it now, for the reason that we are of opinion that the claimant is clearly barred from relief on other grounds. In so doing, we are not to be understood as indicating that this form of certificate is or is not an adequate approval by the Commissioner.

The unconflicting evidence clearly and conclusively shows that the act of the claimant in riding on the front end of the motor, and in attempting to uncouple the car from the motor while they were in motion was guilty of "wilful misconduct" within the meaning of the statute above quoted. He had been repeatedly forbidden to do these things by his proper supervisors, both on Friday and on Monday. He admits all this, and further says freely that he knew the company did not allow these practices; yet he continuously persisted therein from the day he commenced work to the time of his injury on the second day, even after the warning that he would be discharged for a repetition of the offenses. This is not the case of an innocent and thoughtless oversight of an order or rule, but the persistent and systematic defiance of express commands which the claimant fully knew from old experience and from instructions frequently repeated to him within his two working days preceding the accident. To all this he offers nothing in avoidance other than his first plainly incorrect and later abandoned story of his accident. Wholly aside from the formal rules, which are challenged, he had received these express and reiterated orders, which he makes no claim to have overlooked or misunderstood, but which he indifferently flouted and ignored. This clearly amounted to "wilful misconduct", which defeats his claim. *Red Jacket Consolidated Coal & Coke Co.* v. *State Compensation Commissioner*, 111 W. Va. 425, 162 S. E. 665.

The contention that the employer connived at and waived the violation of its rules is not established. The mere statement of one witness that the rules (not the orders of superiors) were "not strictly enforced to the letter"; the fact that another witness had never known an employee to be discharged for the violation of this particular rule; and the failure of the foreman to penalize the claimant for his first offense, are not sufficient to justify the conclusion that the employer had abandoned the rules and orders which it consistently and vigorously insisted upon.

With great reluctance we deny the claims of employees on the ground of a statutory bar. Whenever possible, the allowance from the Compensation Fund should be sustained, but the very maintenance of the fund and the whole system of compensating injured laborers imperatively require that only meritorious claims be allowed. This fund, maintained for the benefit of a vast group of law-abiding, rule-observing, and careful employees, must not be open to depletion by reckless and obstinate employees who may impair it by their own bad practices. This fund is created, and these rules and orders are made, for the benefit of the laborers in all fields. If any one employee elects to violate deliberately and wilfully the very rules and orders by which the state and the employer endeavor to protect him, he does so at his own peril. He cannot justify his calling for relief from the very system whose beneficent rules and regulations he has elected to flout and defy. Courts universally hold that it is the duty of an employer establishing rules, giving orders, and having supervision over employees, not to waive, connive at, or permit the violation of such orders and rules established for the benefit of their employees, and not to refuse to inflict proper penalties therefor. It is equally the duty of this Court not to permit complacently the overt, deliberate or reckless violations of the same orders and rules which we require employers to enforce. This Court can no more be excused for such laxity than

could the employer and his supervising officials. There-fore, however harsh and severe the rule may be in a given case, and however sympathetic the court's attitude may be toward the injured employee, we do not consider ourselves at liberty to refuse to visit on such employee the bar to benefits which the law of the land prescribes.

The order of the Appeal Board and that of the Compensation Commissioner are reversed and this case is remanded with direction that the application of the claimant for compensation be dismissed.

*Reversed and remanded.*

Lovins, Judge, concurring:

I cannot accept the premise that claimant was guilty of wilful misconduct by reason of violation of rules and orders of his employer. I concur in the result for the reason that I believe claimant was guilty of wilful disobedience to a safety rule adopted by his employer and approved by the state compensation commissioner, such violation being a bar interposed by Code, 23-4-2, as amended by Chapter 104, Acts of the Legislature, 1937. I prefer to rely on the plainly expressed provisions of the statute rather than the variant acts or conduct of an injured or deceased employee. The phrase "wilful misconduct" as used in the workmen's compensation statute, in my opinion, connotes perverse, unruly and patently dangerous acts done by an obstinate employee, after opportunity for thought and deliberation.

I distinguish the instant case from the case of *Red Jacket Consolidated Coal & Coke Co. v. State Compensation Commissioner*, 111 W. Va. 425, 162 S. E. 665. In that case the employee was guilty of habitual violation of safety rules as appears from a portion of the opinion therein, reading as follows: "Garcia was in the habit of using very short fuses in his 'doby' mining." Garcia was the deceased employee who lost his life as a result of using short fuses. He had been fined about six months before his death by a "safety club" for a violation, was subse-

quently dismissed from employment but allowed to remain after promising to refrain from future violations, and threatened with dismissal in the event he failed to observe in the future the rule against the use of short fuses, notwithstanding which Garcia frequently violated the rule, which conduct eventually resulted in his death.

The facts in the instant case are essentially different in that the violations by Ragle were not habitual, and frequent, nor was Ragle fined by a "safety club" and discharged from employment. In other words, Ragle was only mildly reproved for his conduct. The facts in this case do not, in my opinion, show contumacy on claimant's part sufficient to constitute wilful misconduct.

I do not believe that the rule in the case of *Coal & Coke Co.* v. *Commissioner, supra,* should be further extended, which is the effect of the opinion herein. I respectfully disagree with the reasoning, but concur in the result for the reasons herein stated.