### Joseph Vaz's Case.

Suffolk. February 8, 1961. — May 1, 1961.

Present: Wilkins, C.J., Whittemore, Cutter, Kirk, & Spiegel, JJ.

*Workmen's Compensation Act*, Injuries to which act applies, Serious and wilful misconduct of employee, Appeal.

On the record in a workmen's compensation case it could not properly be ruled that an employee in a factory was acting outside the scope of his employment in operating an elevator to go to the floor on which his machine was located even though there was a rule forbidding such operation, where it appeared that the employer had acquiesced in a common practice of operation of the elevator by unauthorized employees; nor could it be properly ruled that the employee acted outside the scope of his employment or was guilty of serious and wilful misconduct when, after the elevator had "jumped" his floor and stuck, he climbed over the wall of the elevator and through a window in the elevator shaft and dropped to the ground, whereby he was injured through miscalculation of the distance to the ground. [497–498]

A question as to the period of incapacity in a workmen's compensation case, not raised before the Industrial Accident Board nor the subject of any findings, could not be raised for the first time in this court. [499]

Certification to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The case was heard by *Good, J.*

*James C. Gahan, Jr.,* for the insurer.

No argument nor brief for the claimant.

KIRK, J. This is an appeal from a decree awarding compensation to an employee for an injury sustained October 6, 1958. The award was based upon findings of a single member as supplemented and modified by the reviewing board.

The claimant, Vaz, was a rope machine operator for the Plymouth Cordage Company in whose employ he had been for twenty-two years. He was working for the first time on the 11 P.M. to 7 A.M. shift at the time of his injury which occurred shortly after 3 A.M. when there was a designated relief period of fifteen minutes. He had used the elevator which was operated by push button to go from the second floor where his machine was to the smoking room in the basement (sometimes referred to as the first floor). On his return the elevator "jumped" the second floor and stuck. The doors would not open. After three or four minutes during which his cries for help went unanswered, he stood on a box in the elevator, climbed over the four foot wall of the elevator, opened a window in the rear wall of the elevator shaft, crawled through it, and holding onto the window ledge, with his body hanging down, dropped to the ground. He sustained fractures of both heels.

Vaz thought the distance to the ground from his feet in the hanging position was about four feet. The building where he worked was a two story building, but part of the first floor on the side where the elevator ran was three and one half feet below the ground level. Witnesses variously estimated that the distance from the ledge or sill of the window to the ground was less than ten feet to less than twenty feet.

The insurer admits that Vaz was injured in the course of his employment, but contends that the injury did not arise out of his employment because he was, by rule of the employer, not authorized to run the elevator. If in fact the employee's injury was the result of his doing something he had been forbidden to do, he would not be entitled to compensation since his injury could not be found to have arisen out of his employment. *Ferreira's Case,* 294 Mass. 405, 406. The board found, however, that there was a "common prac-

tice of the employees to use[1] the elevator in question . . . [which practice was] known to the employer. Therefore any rule, if there was one, was not enforced and an unenforced rule is no rule at all."

There was evidence that a sign had been posted in the elevator which read, "Warning — 'No one except elevator operator is allowed to run car and open gates,' '' but there was also evidence that this sign was obscured or covered up by other signs and bulletins. There was evidence of the periodic posting of a list of authorized operators for the elevator, but this too was disputed. Vaz was never listed as an authorized operator; but he had never been told that he should not operate it, and he had used it about one hundred times. There was no authorized elevator operator assigned for the new shift he was working on. He was working alone on the second floor on that shift except for someone fifty or seventy-five feet away at the other end of the room. There was evidence that employees on other shifts had used the elevator whether they were authorized to do so or not, and had been seen doing so by persons in authority without any disciplinary action resulting. Some persons, whose authority to operate the elevator had expired, continued to operate it. Others, in supervisory positions, operated it, but were not on the list of authorized persons, and "just took it for granted" that they could do so.

The board's findings must stand if there is any evidence to support them, and this court will sustain the general finding if possible. *Bajdek's Case,* 321 Mass. 325, 326. *Hachadourian's Case,* 340 Mass. 81, 85. Applying this test to the record we conclude that it cannot be said that the clearly implied finding by the board of a common practice, known to the employer, of operation of the elevator by employees not specifically authorized to do so is without evidential support. The acquiescence of the employer in this practice was sufficient to abrogate the rule and it became a

---

[1] It is clear that the board intended the word "use" in its findings to be synonymous with the word "operate." The record indicates that counsel, witnesses and the member used the words interchangeably during the hearing.

dead letter. *Von Ette's Case,* 223 Mass. 56, 60. Accordingly the use of the elevator by the employee does not defeat his right to compensation.

The insurer also contends that Vaz voluntarily undertook a hazard not contemplated by his contract of employment and, further, that he was guilty of serious and wilful misconduct in adopting the means he used to get out of the elevator. The board found that, in dropping from the ledge of the window, Vaz acted in panic in an emergency. It seems obvious that there was no emergency in the sense that his life and limb were in jeopardy. It may be said, however, that he was in a predicament which might involve his remaining in the elevator until the next shift came on at 6 A.M. The alternative was to attempt to get out through the window in order to get back to his machine. Even if he miscalculated to some extent the distance which he would drop (measured from the bottom of his feet to the ground, while the full length of his body including his extended arms was suspended) it does not necessarily appear that he acted unreasonably. "[T]here was nothing which as matter of law compelled a conclusion that the employee's conduct was so unreasonable as to amount to a complete departure from his employment and to deprive him of the protection of the act." *Maguskas's Case,* 298 Mass. 80, 81. *Lawrence's Case,* 330 Mass. 244, 246. Compare *Wozniak's Case,* 299 Mass. 471. See *Rollins* v. *Boston & Maine R.R.* 321 Mass. 586, 589. It is manifest that Vaz's conduct was not of the quasi criminal nature required to make him guilty of serious and wilful misconduct. See *Silver's Case,* 260 Mass. 222, 224; *Scaia's Case,* 320 Mass. 432, 433–434.

There was no error in excluding a sketch of the factory floor layout. It had served its purpose as a chalk during the hearing. It was not relevant to the issue of whether the use of the elevator was forbidden.

The insurer was not prejudiced by other rulings on evidence; hence we need not decide if there was error. *McLean's Case,* 323 Mass. 35, 39.

The reports of Dr. Ingersoll and the impartial physician Dr. Doherty were sufficient to support the finding of disability. There is no suggestion that the insurer was not seasonably provided with a copy of the impartial report. See G. L. c. 152, § 9; *Schenck's Case,* 293 Mass. 526, 530.

The insurer cannot question for the first time before us the period of incapacity for which compensation was awarded. Without intimating that there was error we simply say that the question is not open because it was not raised before the board and no facts relating to the question were found. *Gustafson's Case,* 303 Mass. 397, 401. *Demetre's Case,* 322 Mass. 95, 101.

*Decree affirmed.*