# Staunton

PEANUT CITY IRON AND METAL CO., INC. AND BITUMINOUS CASUALTY CORPORATION v. WILLIE JENKINS.

September 9, 1966.

Record No. 6300.

Present, All the Justices.

William E. Baggs (Breeden, Howard and MacMillan, on brief), for the appellants.

William F. Davis (M. Anderson Maxey, on brief), for the appellee.

SNEAD, J., delivered the opinion of the court.

Under the Workmen's Compensation Act the Industrial Commission made an award to Willie Jenkins, claimant, for injuries he sustained "arising out of and in the course of his employment" with Peanut City Iron and Metal Co., Inc. The company and its insurer, Bituminous Casualty Corporation, appellants, defended the claim on the ground that Jenkins had been guilty of "wilful misconduct" (Code, § 65-35)[1] by violating a well-known oral safety rule of his employer, which misconduct was the proximate cause of his injuries. They appealed from the award made by the Commission.

The record discloses that claimant had been employed by Peanut City Iron and Metal Co., Inc. for about 9 years and that for approximately 5 years preceding the mishap his main job had been the "cutting up" of junk automobiles for salvage purposes. The procedure generally followed by claimant was to set an automobile on fire "to burn the upholstery and things like that", to let the vehicle cool, and then to dismantle it with a blow torch.

There was an oral work rule of the company that before an automobile was dismantled with a blow torch air holes were to be made in its gas tank by means of an axe or pick. The rule was promulgated "because gas is mighty dangerous" and because punctured gas tanks merely burn and do not explode. The company provided the tools with which the holes were to be made and placed them in the area where the cars were dismantled.

The work rule was "preached" to claimant and his fellow workers "all the time". "[E]verybody in the yard" knew of it. Claimant was aware of the rule and the reason for its existence. He had been reminded of it "many, many times", but on a number of occasions the company's president, J. W. Ginsburg, who was at the yard "all the time", observed him cutting up an automobile without first making holes in its gas tank as required by the rule. On each occasion Ginsburg would "bawl him out" and require him to cut holes in the gas tank before continuing the dismantling operation with the blow torch. However, Ginsburg did not dock claimant's salary or suspend him from work. Approximately a week before the accident occurred Ginsburg saw claimant cutting up a car without first puncturing its gas tank. Ginsburg testified:

---

(1) Code, § 65-35 provides in part: "No compensation shall be allowed for an injury or death: (1) due to the employee's wilful misconduct * * *."

"I saw him cutting a car, I asked him, 'Willie, do you have a hole in that tank?' And rougher words than that actually and he said, 'No, sir.' I said, 'Get off this minute and put a hole in the tank.' I said, 'One of these days you are going to get—somebody is going to get hurt, you will know what I'm talking about,' * * *."

Ginsburg further testified that on that occasion he said to claimant, "If you don't do what I tell you, I'm going to let you go."

On January 19, 1965, the day of the mishap, claimant was engaged in his main duty of dismantling automobiles with a blow torch. He was assisted by Ludie Beale, a fellow employee. He sent Beale to obtain some fuel oil so that the vehicles could be set on fire. Beale returned with the oil, and one car was set ablaze. When the fire had burned out and the car had sufficiently cooled to permit claimant to walk on top of it, he began to cut up the vehicle with a blow torch. Beale offered to punch holes in the car's gas tank, but claimant told him that he would make the holes and directed Beale to secure the "pole truck" (a truck with a small crane mounted upon it). Claimant then proceeded to cut the chassis from the body of the car with the blow torch. Beale returned with the truck, backed it up to the automobile, and at claimant's direction attempted to lift the chassis from the body. The chassis "wouldn't come off", however, because one bolt near the middle, about 5 to 7 feet from the gas tank, held it to the body.

Beale set the chassis down, and the car was turned over on its side. Claimant "got on the ground * * * on the tank side" to cut the bolt with the blow torch. During the process the gas tank exploded "beside the seam" throwing "gas or something" on him, setting fire to his clothing, and burning his chest, right arm, and right shoulder. According to claimant, a spark from the blow torch "must have got in the tank."

Claimant testified that he made two holes in the gas tank before he "started cutting" with the blow torch, but there was abundant testimony as well as physical evidence to the contrary. In its findings of fact and conclusions of law, the Commission found that claimant "knew the oft-repeated work rule to always puncture a gas tank several times for air holes with an axe or pickaxe provided before dismantling a car by using a blow torch"; that he did not make holes in the tank on the car involved, and that his failure to do so was the cause of the explosion and his injuries. The Commission also found that the oral work rule was reasonable; that it existed

for claimant's protection; that claimant's employer had discovered claimant violating the rule on several occasions; that claimant had been admonished for failing to follow the specified procedure, and that upon each reprimand claimant would immediately cut holes in the tank of the car he was dismantling.

However, the Commission further found that there was no fixed penalty for a violation of the work rule; that no punishment or penalty "by way of reduction of pay, suspension from work", or "otherwise" had ever been imposed upon claimant or any other employee for known breaches of the rule, and that "the most that the employer states was ever done is that on one occasion he advised the claimant that 'If you don't follow this (procedure) we will have to let you go.' "

In concluding that claimant was entitled to compensation, the Commission stated in part:

"* * * [T]he aforesaid defense of violation of a work rule is negated and rendered inapplicable as a defense herein in that evidence of repeated known violations by this employee in the past were without punishment or penalty of any kind except oral reprimand; and it is so found."

■ The dominant question presented by the assignments of error *is* whether claimant's employer strictly enforced the oral work rule so as to permit it to successfully defend the claim on the ground that claimant was guilty of wilful misconduct in violating the rule. Appellants concede that there was no fixed penalty for a violation of the rule and that no employee had been discharged or had his salary reduced because of his breach of the rule, but they contend that whether the rule was strictly enforced was a mixed question of law and fact. They say that what constitutes "strict enforcement" is a question of law; that whether the evidence in a given case supports "strict enforcement" is a question of fact, and that the Commission's ruling that the failure on the part of the employer to inflict punishment or a penalty for violation of the rule negates and renders inapplicable the defense of violation of the work rule was not a factual finding but was its own definition of strict enforcement.

Claimant, on the other hand, concedes that the evidence supports the Commission's finding that he violated the oral work rule, but he takes the position that the rule had no validity because it was not strictly enforced by his employer; that the question of

whether it was strictly enforced was one of fact for the Commission to decide; that the Commission decided the question adversely to appellants, and that the Commission's factual findings are conclusive and binding upon this court.

We agree with claimant that in order for appellants to prevail upon the defense of "wilful misconduct", on the ground that claimant intentionally violated a well-known safety rule, they had to show that the rule was strictly enforced by the employer. *Williams v. Benedict Coal Corp.*, 181 Va. 478, 482, 25 S.E. 2d 251; 21A M. J., Workmen's Compensation, § 36, p. 62; 99 C.J.S., Workmen's Compensation, § 261, p. 905. However, we disagree with claimant's contention that the question of whether the rule was strictly enforced was only one of fact for the Commission to decide. We think that it was a mixed question of law and fact, and "[i]t is well settled that conclusions of the Commission upon questions of law, or mixed questions of law and fact, are not binding on us * * *." *Brown v. Fox*, 189 Va. 509, 517, 54 S.E. 2d 109. A mixed conclusion of law and fact is properly reviewable by this court. *Norfolk & Washington Steamboat Co. v. Holladay*, 174 Va. 152, 157, 5 S.E. 2d 486; *Conner v. Bragg*, 203 Va. 204, 207, 123 S.E. 2d 393.

█ It appears from a reading of the Commission's opinion that it held, as a matter of law, that the work rule was not strictly enforced because no punishment or penalty was assessed against claimant for his known violations of it. For reasons stated *infra*, we are of opinion that the standard of strict enforcement applied by the Commission was improper and that the Commission's holding based thereon was erroneous.

In *Mills v. Virginia Electric and Power Co.*, 197 Va. 547, 90 S.E. 2d 124, an employee was injured when he violated a reasonable company rule which required him to wear rubber gloves while working on an energized line. We held that he was guilty of wilful misconduct in disregarding the rule and said:

"If the safety rule is reasonable and is known to the employee and for his benefit, and yet he intentionally does the forbidden act, then he is guilty of wilful misconduct within the meaning of § 65-35. The employer is not required to prove that the employee, with the rule in mind, purposely determined to break it.

" 'If an employee with years of experience * * * is to be allowed to recover compensation on account of an injury due directly to

his disregard of an absolutely fundamental measure of safety, which he admits he well knew, then there would be no case in which the provisions of Section 14 [now § 65-35] of the act would apply.' " (Citing cases.) 197 Va. at p. 552. See also *Riverside Mills* v. *Thaxton*, 161 Va. 863, 872, 172 S.E. 261.

In the case at bar, the Commission found that "claimant violated a known reasonable work rule for the employee's protection thereby causing the explosion resulting in his injuries." The evidence shows that claimant intentionally violated this rule and thus was guilty of "wilful misconduct" within the meaning of § 65-35.

As has been stated, the crucial question involved in this appeal is whether the work rule was strictly enforced by the employer so that it could successfully defend the claim on the ground of the claimant's wilful misconduct.

In Larson, *Workmen's Compensation Law*, Vol. 1, § 33.00, p. 480 the author states:

"The statutory defense of wilful disobedience of safety rules or wilful failure to use a safety device will succeed only if the employee is given actual (as distinguished from constructive) notice of the rule and an understanding of the danger involved in its violation, if the rule is kept alive by *bona fide enforcement*, and if the employee had no valid excuse for the violation." (Italics supplied.)

In § 33.30 of Larson, *supra*, at pp. 484, 485 this statement appears:

"The most frequent ground for rejecting violation of rules as a defense, whether under the safety rule or wilful misconduct defense, is lack of enforcement of the rule in practice. Habitual disregard of the rule has been made the basis of rejecting the defense * * *.

"However, this disregard of rules is relevant only if done under circumstances charging the employer with knowledge and acquiescence. * * *" See also Schneider, *Workmen's Compensation*, Vol. 6, 3rd ed., § 1577(e), p. 333; Bradbury, *Workmen's Compensation*, 3rd ed., p. 544; Minor, *Workmen's Compensation Laws*, p. 253; 99 C.J.S., Workmen's Compensation, § 245, p. 869; 58 Am. Jur., Workmen's Compensation, § 203, p. 712.

In *Ragle* v. *State Compensation Commissioner*, 125 W. Va. 450, 24 S.E. 2d 756, the claimant, a brakeman on an electric motor in a coal mine, disobeyed his employer's rule against riding on the

front end of the motor and was injured. In denying him compensation the court said:

"The contention that the employer connived at and waived the violation of its rules is not established. The mere statement of one witness that the rules (not the orders of superiors) were 'not strictly enforced to the letter'; the fact that another witness had never known an employee to be discharged for the violation of this particular rule; and the failure of the foreman to penalize the claimant for his first offense, are not sufficient to justify the conclusion that the employer had abandoned the rules and orders which it consistently and vigorously insisted upon." 125 W. Va. at p. 456, 24 S. E. 2d at p. 758.

In *Great Western Power Co.* v. *Pillsbury*, 170 Cal. 180, 149 P. 35, a skilled and experienced lineman was killed while working on "hot wires" without wearing rubber gloves which were provided by his employer and were required by a known work rule. The court annulled an award made by the Industrial Accident Commission and said:

"There is no foundation in the evidence for the suggestion that the company had virtually abrogated the rule by failing to enforce it. It is true that no lineman was discharged for failing to wear gloves, but the testimony already outlined shows that the foremen insisted upon compliance when they observed that the rule was disregarded. * * *." 170 Cal. at p. 190, 149 P. at p. 40.

It is true, as the Commission found, that no punishment or penalty of any kind except oral reprimand was inflicted upon claimant for known violations of the work rule, but it is not essential that the employer suspend an employee from his job or reduce his wages for violating a work rule in order for there to be "strict enforcement" of the rule. These sanctions may constitute strict enforcement, but the term is not limited to such penalties. Other actions and conduct of the employer, such as existed in the case at bar, may apply with equal force.

Here, the evidence shows that the employer's oral work rule was "preached" to claimant and his fellow workers "all the time" and that "everybody" knew it. On each occasion that Ginsburg observed claimant violating the rule he would "bawl him out" and require him to comply with it forthwith. When he observed claimant violating the rule approximately a week before the accident occurred he reprimanded him with harsh words, warned him that his

noncompliance with the rule would cause somebody "to get hurt", and told him that if he did not comply with the rule he would be discharged from employment. These uncontradicted circumstances were sufficient to show that the safety rule was strictly enforced by claimant's employer. They indicated a conscientious, *bona fide* effort on behalf of the employer to require claimant and the other employees to fully comply with the rule at all times.

Claimant gave no valid excuse for his failure to comply with the rule. In fact, he testified that he did comply by punching two holes in the tank, but the Commission found that such was not the case.

Moreover, the employer's work rule had not fallen into disuse; it was not so treated by employer as not to be controlling upon the employees, and employer had not condoned or acquiesced in its violation. Cf. *Sloss-Sheffield Steel & Iron Co.* v. *Nations*, 236 Ala. 571, 183 So. 871, 119 A.L.R. 1403; *Mason* v. *Lit Realty Company*, 16 App. Div. 2d 715, 226 N.Y.S. 2d 895; *In re Vaz's Case*, 342 Mass. 495, 174 N.E. 2d 360; *Etherton* v. *Johnstown Knitting Mills Co.*, 184 App. Div. 820, 172 N.Y.S. 724; *Beck* v. *C. & J. Commercial Driveway*, 260 Mich. 550, 245 N.W. 806; *M. P. Gustafson Co.* v. *Industrial Commission*, 348 Ill. 11, 180 N.E. 567; *In re Von Ette*, 223 Mass. 56, 111 N.E. 696, and *Hansen* v. *Paxton & Vierling Iron Works*, 138 Neb. 589, 293 N.W. 415.

We hold that under the facts and circumstances of this case claimant was guilty of "wilful misconduct" within the meaning of § 65-35 by violating a known work rule and that the rule was strictly enforced by his employer. Hence, the Commission erred in entering an award of compensation for claimant. The award appealed from is therefore reversed and compensation is denied.

*Reversed.*