SANDRA CHADWICK, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Baldwin Associates, Appellee).

Fourth District (Industrial Commission Division)   No. 4—88—0116WC

Opinion filed February 9, 1989.

716

Leonard M. Ring & Associates, P.C., of Chicago (Leonard M. Ring and William J. Jovan, of counsel), for appellant.

Robert L. Mueller, of Livingstone, Mueller, O'Brien & Davlin, P.C., of Springfield, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Petitioner's decedent, a 39-year-old pipe fitter, was working on a scaffold or platform 70 to 75 feet in the air as part of a crew installing downspouting in the Clinton Nuclear Power Plant when he fell to his death. At the time, the crew was making its way off the scaffold to a temporary stairway. The arbitrator denied a claim for benefits because, at the time of the fall, decedent was in direct violation of a specific safety rule requiring the use of safety belts which, in the words of the arbitrator, constituted "an unreasonable and unusual risk totally unnecessary to the incidents of his employment." The Industrial Commission (Commission) affirmed the arbitrator and the circuit court confirmed the Commission.

Petitioner concedes the evidence clearly demonstrates decedent was not tethered to the lifeline installed on the scaffold at the time of the fall. There was also testimony from co-workers tending to show the workmen failed to tether themselves to the lifeline because it was "inconvenient" when moving around ceiling rafters or beams which crossed the scaffold at various points. There was also substantial evidence workers, including decedent, attended a safety meeting one or two days prior to the accident at which they were specifically told to remain tethered to the lifeline at all times. Finally, there was evidence presented by respondent showing a worker could walk the entire

length of the platform and could perform all work without ever untethering from the lifeline.

The issue in this case is whether the knowing violation of a safety rule which causes injury removes an employee from the scope of his employment so that injuries suffered as a result thereof do not arise out of and in the course of his employment.

■■ ■ The rule in such cases was set forth by the supreme court in the early case of *Imperial Brass Manufacturing Co. v. Industrial Comm'n* (1922), 306 Ill. 11, 13, 137 N.E. 411, 411-12, quoting *Republic Iron & Steel Co. v. Industrial Comm'n* (1922), 302 Ill. 401, 406, 134 N.E. 754, 755-56:

> " 'Where the violation of a rule or order of the employer takes the employee entirely out of the sphere of his employment and he is injured while violating such rule or order it cannot be then said that the accident arose out of the employment, and in such a case no compensation can be recovered. If, however, in violating such a rule or order the employee does not put himself out of the sphere of his employment, so that it may be said he is not acting in the course of it, he is only guilty of negligence in violating such rule or order and recovery is not thereby barred. [Citation.] *** [I]t does not matter in the slightest degree how many orders the employee disobeys or how bad his conduct may have been, if he was still acting in this sphere of his employment and in the course of it the accident arose out of it.' "

The supreme court has also stated the rule is difficult to apply because the difference between violating a work rule which restricts this sphere of employment and performance of precisely the task for which the employee is engaged, albeit it in a manner forbidden by the employer, is, in many cases, a difference only of degree. If the employee is attempting to do the work he is employed to do but merely violating a rule as to the manner of doing it compensation will be allowed. *Heyman Distributing Co. v. Industrial Comm'n* (1941), 376 Ill. 90, 32 N.E.2d 894.

In *Imperial Brass*, a janitor inhaled fumes from sulfuric acid while cleaning a urinal which it was his duty to clean resulting in death. There was evidence the employee was forbidden to use sulfuric acid. The supreme court upheld compensation for the death on the basis the act of cleaning the urinal was in the course of decedent's employment. As the supreme court succinctly stated: "It was what he was hired to do." *Imperial Brass*, 306 Ill. at 12-13, 137 N.E. at 411.

■ In this case, decedent was performing the duties for which he

was hired. He was not engaged in any work activity which was unauthorized by the respondent. He was not in a place where he was forbidden to be. We find respondent's contention the failure to use the lifeline constituted "gross misconduct" to be unavailing. As the court in *Imperial Brass* indicated, it does not matter "how bad his conduct may have been." If decedent was acting in the sphere of his employment and in the course of it the accident arose, the injury is compensable.

We note, parenthetically, a number of States have enacted specific statutes which address the issue of employee violations of safety rules. In some States, compensation is completely denied for a "willful failure or refusal to use a safety appliance." (See Ga. Code Ann. §114–105 (Harrison 1983); La. Rev. Stat. Ann. §23:1081 (West 1985).) Other States, in contrast, merely reduce the amount of compensation based on the violation. (Compare Wis. Stat. Ann. §102.58 (West 1988) (benefits reduced by 15%); Fla. Stat. Ann. §440.9(4) (West 1981) (benefits reduced by 25%).) Illinois, of course, has no counterpart to these statutes.

The cases cited by respondent do not require a different result. In *Segler v. Industrial Comm'n* (1980), 81 Ill. 2d 125, 406 N.E.2d 542, the employee was attempting to defrost a frozen pot pie for lunch in an area 25 feet from his designated workplace. Claimant was not pursuing any assigned duties. The court denied compensation, finding claimant was performing no job task in that area and his actions could not be thought of as beneficial to the employer.

In *Bradway v. Industrial Comm'n* (1984), 124 Ill. App. 3d 983, 464 N.E.2d 1139, employees were injured while in the process of constructing a pontoon boat on a personal project. The issue was whether the employer acquiesced in this practice. The court held the employees exposed themselves to a risk outside of any reasonable exercise of their duties.

In *Lumaghi Coal Co. v. Industrial Comm'n* (1925), 318 Ill. 151, 149 N.E. 11, claimant was a mine examiner who made repairs at night. Electric motors used to haul cars of coal during the day were stored at night and their use was not permitted at night. On the night of the accident claimant used one of the motors and was injured. Compensation was denied since claimant chose to violate positive instructions and to voluntarily, without knowledge of the employer, engage in a hazardous method of taking him from one part of the mine to another. Claimant had thus put himself out of the reasonable sphere of his employment since it was clear the place where the motors which he was forbidden to use were stored was not a place where

he was permitted to work.

In this case, claimant was where he was supposed to be, doing what he was hired to do, albeit in an obviously negligent manner. That the risk was unreasonable is immaterial since the violation occurred within the course of claimant's employment.

The decision of the Commission denying benefits is against the manifest weight of the evidence and is reversed. The cause is remanded to the Industrial Commission for the purpose of awarding death benefits.

Circuit court reversed; Industrial Commission reversed; remanded to the Industrial Commission for further proceedings.

BARRY, P.J., and McNAMARA, WOODWARD, and LEWIS, JJ., concur.