Docket No. 86969–Agenda 32–September 1999.

TIMOTHY R. SAUNDERS, Appellant, v. THE INDUSTRIAL COMMISSION 
et al
. (Beloit Corporation, Appellee).

Opinion filed January 21, 2000.

JUSTICE RATHJE delivered the opinion of the court:

Claimant, Timothy R. Saunders, worked for Beloit Corporation as a dispatcher. On May 16, 1994, Saunders was injured when a forklift operated by his coworker, Jan Gundry, ran over his left ankle. Saunders filed an application for adjustment of claim, and the parties proceeded to arbitration. The arbitrator denied compensation, finding that Saunders’ injury did not arise out of his employment. The Industrial Commission (Commission) adopted the arbitrator’s findings, and the circuit court confirmed the Commission’s decision. Saunders appealed, and the Industrial Commission division of the appellate court affirmed the denial of compensation. Two judges of the appellate court filed a statement that the case involved a substantial question that warranted review by this court, and this court granted Saunders’ petition for leave to appeal. See 177 Ill. 2d R. 315(a).

BACKGROUND

The witnesses disagree as to how Saunders’ injury occurred. Saunders testified that, at the time of his injury, he was traveling from the shipping department to the office to retrieve his lunch. Because he “had a limited time” for break, Saunders hitched a ride on a forklift operated by Gundry. Gundry’s forklift was designed to be operated by one person only and was not large enough to seat two passengers. Moments before the accident, Saunders dismounted and began walking along the left side of the forklift. After Saunders took four or five strides, Gundry began to make a right turn, causing the left rear tire of the forklift to run over Saunders’ left ankle. From the time he dismounted to the time of the injury, 5 to 10 seconds elapsed. Gundry corroborated Saunders’ version of the accident.

Keith Smithson, a Beloit employee who witnessed Saunders’ injury from a distance of 15 to 20 feet, gave a different account. While returning from a restroom break, Smithson saw Saunders riding double on Gundry’s forklift. Saunders was riding in “a sidesaddle position,” with his left leg hanging off the left side of the forklift. As Gundry began to make a right turn, Saunders stepped off the forklift and caught his left foot beneath the tire. Saunders immediately fell to the ground without taking any steps.

Although the witnesses gave differing accounts of the accident, all of the witnesses agreed that Beloit’s safety rules strictly prohibited employees from riding double on a forklift. Saunders, Gundry, and Smithson had attended Beloit’s safety training sessions, and they all were aware of Beloit’s rule against riding double on forklifts. According to Smithson, the rule against riding double “is a known rule in the plant.” David Kessler, Beloit’s safety administrator, testified that the rule against riding double on forklifts was communicated to employees through training sessions, monthly safety “contacts,” and an employee handbook that all employees receive. Dean Waters, a union representative, likewise confirmed that Beloit conducted training sessions on forklift safety and that Beloit’s safety rules prohibited employees from riding double on forklifts.

As to the enforcement of the rule against riding double on forklifts, the witnesses again were more or less in agreement. Saunders testified that, during his 17 years at Beloit, the rule was violated “approximately maybe 10 times.” Gundry testified that he had transported a supervisor on his forklift three or four times in the past 14 years and that Saunders was not the first coworker to ride on his forklift. Smithson, who has worked for Beloit for 17 years, had never before witnessed another coworker riding double on a forklift. When Waters, the union representative, was asked how many times he had seen the rule violated during his eight years at Beloit, he responded, “I couldn’t give you a number. There wouldn’t be that many times.”

The arbitrator denied Saunders’ request for compensation, concluding that Saunders’ ankle injury did not arise out of his employment. In reaching this conclusion, the arbitrator specifically found that Saunders and Gundry were not credible witnesses, while Smithson, who “had no reason to demonstrate any bias in his testimony,” was credible. The arbitrator further found that:

“the accident was caused by an activity of the Petitioner which did not arise out of his employment. Petitioner’s activity in violating the safety rule and riding double on the forklift vehicle was not in furtherance of any aspect of Petitioner’s employment. Riding on the forklift vehicle had nothing to do with Petitioner’s job, it was not part of his job responsibilities, and it was of no benefit to the employer for Petitioner to ride double on that vehicle.”

The arbitrator held that “the activity of riding double on the forklift was not within the scope of the Petitioner’s employment” and “created an unreasonable risk beyond that to which Petitioner would be exposed during the course of his employment.”

Saunders appealed to the Commission, and the Commission adopted the arbitrator’s findings. The circuit court of Winnebago County confirmed the Commission’s decision, and the Industrial Commission division of the appellate court affirmed the circuit court. This appeal followed.

ANALYSIS

The sole issue in this appeal is whether the Commission’s decision denying Saunders’ claim was against the manifest weight of the evidence. We hold that it was not.

 To be compensable under the Workers’ Compensation Act, the injury complained of must be one “arising out of and in the course of the employment.” 820 ILCS 305/2 (West 1998). An injury “arises out of” one’s employment if its origin is in some risk connected with or incident to the employment, so that there is a causal connection between the employment and the accidental injury. 
Parro v. Industrial Comm’n
, 167 Ill. 2d 385, 393 (1995). An injury is received “ ‘in the course of employment [if] it occurs within a period of employment, at a place where the worker may reasonably be in the performance of his duties, and while he is fulfilling those duties or engaged in something incidental thereto.’ ” 
Parro
, 167 Ill. 2d at 393, quoting 
Scheffler Greenhouses, Inc. v. Industrial Comm’n
, 66 Ill. 2d 361, 367 (1977). The occurrence of an accident at the claimant’s workplace does not automatically establish that the injury arose out of the claimant’s employment. 
Parro
, 167 Ill. 2d at 393. The burden of establishing the necessary causal relationship between the injury and the employment rests with the claimant. 
Lee v. Industrial Comm’n
, 167 Ill. 2d 77, 81 (1995).

As Saunders correctly notes, the particular issue in this case is governed by the principles set forth in 
Republic Iron & Steel Co. v. Industrial Comm’n
, 302 Ill. 401, 406 (1922):

“The rule is, that where the violation of a rule or order of the employer takes the employee entirely out of the sphere of his employment and he is injured while violating such rule or order it cannot be then said that the accident arose out of the employment, and in such a case no compensation can be recovered. If, however, in violating such a rule or order the employee does not put himself out of the sphere of his employment, so that it may be said he is not acting in the course of it, he is only guilty of negligence in violating such rule or order and recovery is not thereby barred. [Citation.] *** [I]t does not matter in the slightest degree how many orders the employee disobeys or how bad his conduct may have been if he was still acting in the sphere of his employment and in the course of it the accident arose out of it.” 
Republic Iron
, 302 Ill. at 406.

Three years after 
Republic Iron
, this court decided a case remarkably similar to the one presently before us. In 
Lumaghi Coal Co. v. Industrial Comm’n
, 318 Ill. 151 (1925), the claimant, Alfred Sudbring, worked for Lumaghi as a mine examiner. On the evening of his injury, Sudbring was required to travel from one examination site to another, a distance of approximately one mile. Instead of traveling by foot or via the cart and mule that Lumaghi had provided for him, Sudbring decided to use one of the electric motors that hauled coal trains into the mine. Sudbring lost control of the motor while attempting to start it, and the motor ran over and severed Sudbring left leg. 
Lumaghi
, 318 Ill. at 151-52.

Lumaghi’s safety rules prohibited the use of motors by anyone other than designated motor operators. Sudbring testified that his purpose in taking the motor was to hasten his trip from one worksite to another. Prior to his accident, Sudbring had used the motor four or five times as a means of travel, while another mine examiner had used the motor approximately three times. Sudbring denied ever being told not to use the motors. The mine superintendent, the mine manager, and the mine electrician all testified that the mine examiners were suspected of using the motors at night and that the mine superintendent had specifically told the mine examiners, including Sudbring, not to use them.

In reversing the Commission’s award of compensation, this court first rejected the proposition that use of the motors by the mine examiners had developed into a workplace custom. Although management suspected that the mine examiners used the motors as a means of travel, no person in authority ever actually witnessed the use of a motor by a mine examiner, such use occurred only at night, and management specifically prohibited the use of motors by mine examiners. In any event, the motors “were not used very frequently by the mine examiners.” 
Lumaghi
, 318 Ill. at 154.

This court then held that, by attempting to operate a motor, Sudbring “voluntarily went outside of the reasonable sphere of his employment and put himself beyond the protection of the master’s implied undertaking.” 
Lumaghi
, 318 Ill. at 155. In reaching this result, this court acknowledged that, because contributory negligence is no defense to a workers’ compensation claim, an employee may violate a safety rule without necessarily leaving the sphere of his employment. 
Lumaghi
, 318 Ill. at 155. Nevertheless, “[t]he employer is not liable for every accidental injury which may happen to an employee during his employment.” 
Lumaghi
, 318 Ill. at 156. For example,“[t]he employer is not liable where the employee exposes himself to a danger which is not one arising from the employee’s employment.” 
Lumaghi
, 318 Ill. at 156.

Applying these principles, this court concluded that Sudbring did more than simply violate a safety rule:

“By his own testimony he admits he left the place where his duties required him to go and went to the motor shed, where, he testified, he was not supposed to go, and in addition undertook to operate a dangerous machine, which both the rules of the employer and instructions given him by the mine superintendent forbade him to use or attempt to operate. He testified he put up the mule which was furnished him for the performance of his duties and then went to the motor pit for the purpose of taking out a motor to make a trip of about a mile to help the other mine examiners perform a piece of work, 
and that his purpose in attempting to take the motor out was to enable him to make the trip in a shorter time
. He chose to violate the rule of the company and the positive instructions of its superintendent, and to voluntarily, without the knowledge of the master, 
engage in a hazardous method of taking him from one part of the mine to another when his duties required him to make the trip in a safer manner
.” (Emphasis added.) 
Lumaghi
, 318 Ill. at 155.

Because Sudbring “did not attempt to use the motor 
for any other purpose than to enable him to ride to the place where he wanted to go, quicker than he could go by driving the mule or on foot
,” this court concluded that “[t]he accident did not arise out of Sudbring’s employment.” (Emphasis added.) 
Lumaghi
, 318 Ill. at 157. Accordingly, the Commission’s decision to award compensation was reversed. 
Lumaghi
, 318 Ill. at 157.

We see no meaningful distinction between 
Lumaghi
 and the case presently before us. At the time of his injury, Saunders was traveling from the shipping department to the office to retrieve his lunch. Instead of traveling by foot (which unquestionably was allowed) or by riding single on a forklift (which may have been allowed), Saunders chose a means of travel expressly forbidden by Beloit’s safety rules. By riding double on a forklift, Saunders engaged in a hazardous method of travel, the sole purpose of which was Saunders’ personal convenience. All of the witnesses, including Saunders, knew of the safety rule prohibiting riding double. Indeed, Beloit published the rule in its employee handbook and regularly communicated the rule to its employees through training sessions and monthly safety “contacts.” Moreover, all of the witnesses agreed that, although this rule had been breached in the past, breaches were rare.

To be sure, unlike the employee in 
Lumaghi
 whose job description in no way called for the operation or use of motors, Saunders’ job description included the operation and use of forklifts. However, we attach no significance to this distinction. Saunders’ job description included using a forklift, by himself, to move machine parts from one part of the plant to another. Saunders’ job description 
did not
 include hitching a ride to the break room on a passing forklift. On the contrary, Beloit’s safety rules expressly forbade all employees–including Saunders–from engaging in such behavior.
(footnote: 1)

CONCLUSION

The Commission in this case reached the same conclusion that this court reached in 
Lumaghi
: that the employee’s conscious violation of a safety rule was purely for his own personal convenience, in no way was required by or benefitted his employer, and therefore did not arise out of his employment. The facts undeniably support this conclusion. Accordingly, we hold that the Commission’s denial of Saunders’ claim was not against the manifest weight of the evidence.

The judgment of the appellate court is affirmed.

Affirmed
.

CHIEF JUSTICE HARRISON, dissenting:

When my colleagues say that Saunders acted as he did solely for his “personal convenience” (slip op. at 6), I do not know what they mean. Saunders was hit by a forklift at work while on his way to a scheduled break on his employer’s premises. The break was part of his official workday, and he needed it in order to continue working efficiently.

The reason Saunders rode a forklift is that it enabled him to complete this portion of his workday in an expeditious and direct way. Had the accident not occurred, both Saunders and the employer would have profited. Saunders would have been better off because he would have been able to eat lunch sooner. The employer would have been better off because the amount of time Saunders was away from his regular job duties would have been reduced.

The majority’s contention that Saunders’ injury did not arise out of his employment is not supported by the case law. In situations such as this, where an employee sustains injuries while taking his lunch break, our court has held that:

“the most critical factor in determining whether the accident arose out of and in the course of employment is the location of the occurrence. Thus, where the employee sustains an injury during the lunch break and is still on the employer’s premises, the act of procuring lunch has been held to be reasonably incidental to the employment. [Citations.] This rule remains true even where the injury was not actually caused by a hazard of the employment. [Citation.] The rule is also unchanged by the fact that the employee receives no pay for the lunch break and is not under the employer’s control, being free to leave the premises. [Citations.]” 
Eagle Discount Supermarket v. Industrial Comm’n
, 82 Ill. 2d 331, 339 (1980).

While Saunders may have been careless in riding on the forklift as he did, negligence on an employee’s part is not a bar to recovery under the Workers’ Compensation Act. 
Pathfinder Co. v. Industrial Comm’n
, 62 Ill. 2d 556, 563 (1976). Similarly, Saunders is not disqualified from receiving benefits under the Act simply because his conduct violated company safety rules. The Illinois General Assembly has never made safety rule violations a defense under the Workers’ Compensation Act, and no such statutory defense exists.

If an employee is acting within the sphere of his employment, doing the work he is employed to do, he is entitled to compensation even if he is guilty of violating work rules. 
Heyman Distributing Co. v. Industrial Comm’n
, 376 Ill. 90, 92-93 (1941). “[I]t does not matter in the slightest degree how many orders the employee disobeys or how bad his conduct may have been ***.” 
Republic Iron & Steel Co. v. Industrial Comm’n
, 302 Ill. 401, 406 (1922).

Lumaghi Coal Co. v. Industrial Comm’n
, 318 Ill. 151 (1925), the case upon which the majority’s decision is founded, is inapposite. There the injured employee had gone to an area of the employer’s premises where he was not permitted to be and used equipment he was not authorized to use. Neither of those circumstances is present here. Saunders was allowed to use forklifts and was in a place he was allowed to be.

The facts of this case are analogous to those presented in 
Chadwick v. Industrial Comm’n
, 179 Ill. App. 3d 715 (1989), where an employee was fatally injured when he fell from a scaffold. The employee knew he was supposed to tether himself to a lifeline, but failed to do so. Coworkers testified that they neglected to use the lifeline because it was “inconvenient.” In reversing the denial of benefits, the appellate court held that the injury was compensable notwithstanding the decedent’s obvious negligence because the decedent was where he was supposed to be doing what he was hired to do. 
Chadwick
, 179 Ill. App. 3d at 717-19.

The Workers’ Compensation Act is remedial in nature and should be liberally construed to accomplish its purpose. 
Pathfinder Co.
, 62 Ill. 2d at 563. Consistent with this view, our court has allowed recovery of workers’ compensation benefits where an employee was injured while playing softball after hours and off premises (
Jewel Tea Co. v. Industrial Comm’n
, 6 Ill. 2d 304, 312-16 (1955)), died in an automobile accident while driving home from a company golf outing (
Lybrand, Ross Bros. & Montgomery v. Industrial Comm’n
, 36 Ill. 2d 410 (1967)), sustained lacerations while sunbathing after taking a lunch-hour swim (
Scheffler Greenhouses, Inc. v. Industrial Comm’n
, 66 Ill. 2d 361 (1977)), and got hurt tossing a frisbee on the company’s parking lot during an authorized lunch break (
Eagle Discount Supermarket v. Industrial Comm’n
, 82 Ill. 2d 331 (1980)). If those claimants were entitled to benefits, as we found them to be, there is no just reason for denying benefits to someone like Timothy Saunders. He was doing the best he could to get on with the job he was hired to do and he was injured in the process. Under the Workers’ Compensation Act, he deserves compensation. I therefore dissent.

JUSTICES BILANDIC and FREEMAN join in this dissent.

FOOTNOTES
1:     
1
Saunders’ counsel argued strenuously at oral argument that forklift operators are uniquely exempt from Beloit’s categorical prohibition against riding double on forklifts. This argument not only finds no support in the record but also is belied by Saunders’ admission that riding double violated Beloit’s safety rules.