J.S. MASONRY, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.*
(Josef Piatek, Appellee).

First District (Illinois Workers' Compensation Commission Division)
No. 1—06—0717WC

Opinion filed December 19, 2006.

Roddy, Leahy, Guill & Zima, Ltd., of Chicago (Stephen A. Carter, of counsel), for appellant.

Manchik & Romaker, of Chicago (Charles P. Romaker, of counsel), for appellee.

JUSTICE HOFFMAN, delivered the opinion of the court:

The claimant, Josef Piatek, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2002)), seeking benefits for injuries he received while in the employ of J.S. Masonry, Inc. (the Company). The Industrial Commission[1] (Commission) awarded the claimant benefits under the Act and the circuit court of Cook County confirmed the Commission's decision. The Company now appeals that judgment. For the reasons that follow, we affirm.

The following factual recitation is taken from the evidence presented at the arbitration hearing.

The 52-year-old claimant had worked for the Company as a bricklayer's helper for approximately one year prior to his accident on June 10, 2002. His primary duty was to relay bricks, blocks and mortar to the bricklayers at the work site. He also assisted in constructing any scaffolding.

The claimant testified that, on June 10, 2002, he assisted other workers in the construction of a second-level scaffolding at a jobsite. According to the claimant, the horizontal rail on the scaffold, which was to serve as a safety gate, was tied with wire to the vertical rail because the horizontal rail was too long. Consequently, each time a load of bricks was delivered, the claimant was required to undo the wire so that the machine lift operator could place the load of bricks directly on the scaffold. The claimant was to receive each load and then refasten the horizontal rail with the wire.

The claimant stated that, as he began to work on the morning of

---

[1]Effective January 1, 2005, the name of the Industrial Commission was changed to the "Illinois Workers' Compensation Commission." However, because the Industrial Commission was named as such when the instant cause was originally filed, we will use this name for purposes of consistency.

June 10, 2002, the owner of the Company, Jan Staszael, passed by him and said: "If you can't manage, you can go home." The claimant testified that he did not understand the comment. Staszael testified that he reminded the claimant to pin the safety gate. According to Staszael, the claimant said that he would pin the gate, after which Staszael told him that if he did not pin the gate, he would be sent home. Staszael stated that, to his knowledge, all the safety gate fasteners were working on that day. He testified that it is the responsibility of the bricklayer's helper to unfasten the gate when a load of bricks is delivered to the scaffold and refasten the bar after the load has been lifted into position. Staszael admitted that the Company has no written rules regarding scaffold construction or the use of a safety gate.

In the afternoon of June 10, 2002, at approximately 2 p.m., the claimant was on the scaffold, carrying a brick or block. He testified that he tripped over a brick and fell onto the horizontal rail which was acting as a safety gate. The barrier snapped off and the claimant fell approximately four meters to the ground below and landed on his left side.

The claimant was taken by ambulance to Christ Hospital and underwent surgery to repair a comminuted, open fracture of the distal radius of his left wrist. The claimant also suffered from a laceration with partial degloving of his mid left leg and a transverse contused laceration over the distal aspect of the volar area of his left foot.

Josef Gladowski testified that he was employed by the Company as a bricklayer. On the morning of the accident, he was assisted by the claimant on the scaffold and he heard Staszael remind the claimant to fasten the safety bar (horizontal rail) or he would be sent home. At the time of the claimant's accident, Gladowski did not note if the safety gate was pinned or unpinned. He saw the claimant back up, "hit the railing," and then fall. He did not believe that there were any foreign devices such as wire used to fasten the gate.

Pawel Sajdak testified that he was employed as a machine lift operator for the Company on June 10, 2002. Sajdak stated that he did not witness the claimant's accident. However, he had reminded the claimant earlier that day to close the safety gate.

After his hospitalization, the claimant was treated by Dr. Viorel Raducan at the Parkview Musculoskeletal Clinic. When Dr. Raducan examined the claimant on October 3, 2002, he noted that his wrist fracture was healed, but his grasp and grip were weak. Aggressive occupational therapy was recommended. As to the claimant's leg injury, Dr. Raducan noted evidence of sequela of the left ankle and prescribed physical therapy. He concluded that the claimant was unable to work.

On November 7, 2002, Dr. Raducan again noted that the claimant

exhibited a weak grip and stiffness in his left wrist as well as short flexors of the fingers. He again recommended aggressive occupational therapy, and determined that the claimant was still unable to work.

On November 21, 2002, the claimant returned to Dr. Raducan with complaints of left shoulder pain and stiffness. Dr. Raducan observed that the claimant's shoulder was tender anteriorly and it showed limitations in external rotation, internal rotation, and abduction. He opined that the claimant's shoulder was injured at the same time he sustained the wrist injury, noting that "fractures of the wrist occur by falling hard or some kind of axial loading of the external upper extremity, which can very well propagate the shock from the wrist all the way into the shoulder." Dr. Raducan recommended physical therapy for the claimant's shoulder. The claimant testified that he had not complained of left shoulder pain prior to the November 21, 2002, examination because he had not attempted to lift his left arm until that time.

Dr. Raducan examined the claimant again on January 9, 2003, and found that the claimant's left wrist range of motion was "almost functional," with grip strength at 50% compared to the right side. The claimant's glenohumeral joint was still very stiff, with "quite a bit" of deficit for internal rotation in the left shoulder. Dr. Raducan recommended physical and occupational therapy to improve range of motion of the glenohumeral joint, and opined that the claimant was unable to work.

When he examined the claimant at a follow-up exam on January 31, 2003, Dr. Raducan found less than 50% range of motion in the claimant's left wrist, that his fingers were stiff, and that he could not make a fist. Range of motion in the claimant's shoulder was functional, but was about 40% in the glenohumeral joint, and 60% in the scapular thoracic joint, with "quite a bit" of deficit of internal rotation. Dr. Raducan suggested a functional capacity evaluation (FCE).

The FCE was conducted on February 6, 2003, by Tom Kokocinski, a licensed physical therapist. Kokocinski found that the claimant demonstrated severe range of motion limitation, as well as weakness of his left shoulder, wrist, and fingers. Based upon objective tests, Kokocinski concluded that the claimant was able to lift 20 to 50 pounds occasionally, but could lift no more than 10 pounds over head level. Kokocinski opined that the claimant was unable to perform the essential functions of a bricklayer's helper because the job required him to lift amounts in excess of 100 pounds. Kokocinski recommended that the claimant see an orthopedic surgeon for a consultation on his left shoulder range of motion restrictions. If any surgical procedure were performed, Kokocinski advised that the claimant continue with physi-

cal therapy. If no surgery was to be performed, Kokocinski recommended a work conditioning program, with the caveat that the claimant's shoulder pain must first be resolved.

Dr. Raducan reviewed the claimant's FCE on February 13, 2003. He found that one of the major limitations to the claimant's work capacity was the limited range of motion in his left shoulder. He recommended shoulder manipulation under general anesthesia followed by aggressive range of motion physical therapy. He also advised the claimant to begin a work hardening program. Dr. Raducan issued an "off work" slip at that time.

At the arbitration hearing, the claimant testified that he was unable to carry anything in his left hand because he could not make a fist. He stated that the range of motion was reduced in his left wrist as compared to the right and that he could not lift his left arm or bend it toward his back. The claimant also complained of a pinching pain in his left leg when walking.

Staszael testified at the hearing that safety at a work site was important because the Company had been fined by OSHA the year before the claimant's accident. Staszael stated that he had a second conversation with the claimant prior to the accident at which time he again reminded the claimant to pin the safety gate. According to Staszael, he had orally warned the claimant prior to his accident regarding fastening the safety bar, but admitted that he had never issued the claimant a written warning.

Following the hearing which was held pursuant to section 19(b) of the Act (820 ILCS 305/19(b) (West 2002)), the arbitrator denied the claimant benefits, finding that he failed to prove that he sustained accidental injuries on June 10, 2002, arising out of his employment because the claimant committed an act in violation of the Company's safety rules which took him out of the scope of his employment.

The claimant filed a petition for review of the arbitrator's decision before the Industrial Commission. In a unanimous decision, the Commission reversed the arbitrator's decision, finding that, "regardless of whether or not [the Company] had a safety rule and/or [the claimant] violated [the Company's] safety rule," the claimant sustained an accidental injury on June 10, 2002, arising out of and in the course of his employment. The Commission awarded the claimant temporary total disability (TTD) benefits for 58 weeks and $39,094 for necessary medical expenses. The Commission also remanded the matter to the arbitrator for further proceedings pursuant to *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327, 399 N.E.2d 1322 (1980).

The Company filed a petition for judicial review of the Commission's decision in the circuit court of Cook County. The circuit court confirmed the decision and this appeal followed.

The Company first argues that the Commission erred as a matter of law in finding that the claimant's injuries arose out of his employment because the claimant's failure to fasten the safety gate was a violation of the Company's rules, taking him out of the scope of his employment. The claimant maintains that because he was performing tasks for the benefit of the Company at the time of the accident, he was in the sphere of his employment and his injuries "arose out of his employment." We agree with the claimant.

To be compensable under the Act, the injury complained of must be one "arising out of and in the course of the employment." 820 ILCS 305/2 (2002). An injury is said to "arise out of" one's employment if its origin is in some risk connected with or incident to the employment, so that there is a causal connection between the employment and the injury. *Parro v. Industrial Comm'n*, 167 Ill. 2d 385, 393, 657 N.E.2d 882 (1995). An injury is received in the course of employment when it occurs within the period of employment, at a place where the worker may reasonably be in the performance of his duties, and while he is fulfilling those duties or is engaged in something incidental thereto. *Parro*, 167 Ill. 2d at 393. In this case, there is no dispute concerning the question of whether the claimant's injury was sustained in the course of his employment. The only issue is whether it arose out of his employment.

The Company argues that, since the claimant failed to pin the safety bar, he violated a Company safety rule and, as a consequence, his injury did not arise out of his employment. The Company contends that the proximate cause of the claimant's accident and resulting injuries was his violation of a safety rule. In support of its arguments in this regard, the Company relies upon the case of *Saunders v. Industrial Comm'n*, 189 Ill. 2d 623, 727 N.E.2d 247 (2000). In *Saunders*, the claimant was denied benefits when he fell from a forklift on which he was riding double as a passenger, a practice forbidden by his employer, for the sole purpose of traveling to the break room in order to retrieve his lunch. Because the claimant's job description did not include "hitching a ride *** on a passing forklift," the supreme court found that the claimant's act was purely for his own personal convenience and, therefore, did not arise out of his employment, and he was not entitled to benefits under the Act. *Saunders*, 189 Ill. 2d at 631-32.

In concluding that the claimant's accident arose out of his employment, the Commission relied upon the supreme court's decision in *Republic Iron & Steel Co. v. Industrial Comm'n*, 302 Ill. 401, 134 N.E. 754 (1922), and this court's decision in *Chadwick v. Industrial Comm'n*, 179 Ill. App. 3d 715, 534 N.E.2d 1000 (1989). The Commis-

sion found that the facts of this case were more analogous to those in *Chadwick* than the facts in *Saunders*. In *Chadwick*, death benefits under the Act were awarded to the estate of a pipe fitter who fell to his death while he was working as a result of his failure to tether himself to the lifeline installed on a scaffold in direct violation of a safety rule requiring the use of safety belts. *Chadwick*, 179 Ill. App. 3d at 716-18.

Contrary to the Company's arguments, we find no conflict between the holding in *Saunders* and the holding in *Chadwick*. *Saunders* stands for the proposition that an employee's injury does not arise out of his employment when the injury is the result of an activity prohibited by company rules and conducted solely as a personal convenience. *Saunders*, 189 Ill. 2d at 631. In *Chadwick*, this court held that an injury suffered while an employee is performing duties for which he was hired arises out of the employment, without regard to the fact that the employee knowingly violated a safety rule. *Chadwick*, 179 Ill. App. 3d at 717-18. The rule in *Saunders* is applicable in cases where the employee is acting outside the sphere of his employment when injured, and the analysis in *Chadwick* is applicable when an injury is sustained while the employee is engaged in an authorized work activity.

In *Republic Iron & Steel Co. v. Industrial Comm'n*, 302 Ill. 401, 134 N.E. 754 (1922), the supreme court set forth the proposition that governs cases in which an employee violates a rule and is injured.

"The rule is, that where the violation of a rule or order of the employer takes the employee entirely out of the sphere of his employment and he is injured while violating such rule or order it cannot be then said that the accident arose out of the employment, and in such a case no compensation can be recovered. If, however, in violating such a rule or order the employee does not put himself out of the sphere of his employment, so that it may be said he is not acting in the course of it, he is only guilty of negligence in violating such rule or order and recovery is not thereby barred. \*\*\* [I]t does not matter in the slightest degree how many orders the employee disobeys or how bad his conduct may have been if he was still acting in the sphere of his employment and in the course of it the accident arose out of it." *Republic*, 302 Ill. at 406.

■ The decisive issue is whether the employee was, at the time of the accident, violating a rule while still in the scope of his employment, or whether the alleged rule violation took him outside its sphere. *Heyman Distributing Co. v. Industrial Comm'n*, 376 Ill. 90, 92-93, 32 N.E.2d 894 (1941). Here, the claimant was performing the duties for which he was hired, namely, to stand atop a scaffold and receive

materials and to relay bricks, blocks and mortar to the bricklayers. He was not in an area in which he was forbidden to enter and was not engaged in any activity which was unauthorized by the Company. Although he may have been performing his duties in a negligent manner, the claimant was "doing exactly the thing he was employed to do." *Imperial Brass Manufacturing Co. v. Industrial Comm'n*, 306 Ill. 11, 15, 137 N.E. 411 (1922). The claimant was acting in the sphere of his employment and his injuries arose out of his employment, without regard to the factual dispute as to whether he had violated a Company rule by failing to secure the safety gate. We conclude, therefore, that the Commission did not err in finding that the claimant's injuries arose out of and in the course of his employment.

■ The Company next argues that the Commission's "implied finding" that the claimant's left shoulder condition is related to his June 10, 2002, injury is against the manifest weight of the evidence. In support of its argument in this regard, the Company notes that the claimant never complained of any left shoulder involvement until his visit to Dr. Raducan on November 21, 2002, months after his accident. The Company also criticizes the Commission for failing to make specific causation findings relating to the claimant's left shoulder condition.

In its written decision, the Commission found:

"[B]ased upon the medical records and the chain of events [the claimant] sustained a compensable accident on June 10, 2002, that is causally connected to his present condition of ill-being."

The Commission noted that the claimant was seeking compensation for injuries to his left leg, arm, wrist and shoulder. The Commission also detailed medical evidence and testimony establishing that the claimant had sustained an accidental injury arising out of his employment as a bricklayer's helper. Thus, it is clear that the Commission found the evidence sufficient to establish that the injury to the claimant's left shoulder was causally connected to the June 10, 2002, accident. Although the Commission is required to make findings of fact and conclusions of law (820 ILCS 305/19(e) (West 2002)), there is no requirement that any particular language be used. *Wolfe v. Industrial Comm'n*, 138 Ill. App. 3d 680, 687, 486 N.E.2d 280 (1985). Moreover, any alleged deficiency in the Commission's written decision is due to the Company's failure to request more specific findings pursuant to section 19(e) of the Act. 820 ILCS 305/19(e) (West 2002); *Lunt v. Industrial Comm'n*, 75 Ill. 2d 455, 456, 389 N.E.2d 533 (1979). Further, we find no merit in the Company's argument that the Commission's "implied finding" that the claimant's shoulder injury is causally related to his accident is contrary to the manifest weight of the evidence.

Whether a causal relationship exists between a claimant's employment and his condition of ill-being is a question of fact to be resolved by the Commission. *Certi-Serve, Inc. v. Industrial Comm'n*, 101 Ill. 2d 236, 244, 461 N.E.2d 954 (1984). The Commission's determination on a question of fact will not be disturbed on review unless it is against the manifest weight of the evidence. *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 44, 509 N.E.2d 1005 (1987). For a finding of fact to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291, 591 N.E.2d 894 (1992).

In this case, Dr. Raducan's notes dated November 21, 2002, state that the claimant complained of left shoulder pain and stiffness. He noted that the claimant's left shoulder was tender anteriorly and showed limitations in external rotation, internal rotation, and abduction. Dr. Raducan opined that the claimant's shoulder was injured at the same time he sustained the wrist injury, noting that "fractures of the wrist occur by falling hard or some kind of axial loading of the external upper extremity, which can very well propagate the shock from the wrist all of the way into the shoulder." The claimant testified at the hearing that he did not complain of left shoulder pain to Dr. Raducan until his November appointment because he had not attempted to lift his left arm until that time. Based upon the unrefuted medical evidence of record and the claimant's testimony, which standing alone is sufficient to support an award of benefits (see *Seiber v. Industrial Comm'n*, 82 Ill. 2d 87, 97, 411 N.E.2d 249 (1980)), we are unable to conclude that the Commission's finding of a causal connection between the claimant's work-related accident of June 10, 2002, and his left shoulder condition is against the manifest weight of the evidence.

■ Finally, the Company contends that the Commission's award of TTD benefits from June 11, 2002, through the date of the hearing on July 22, 2003, is against the manifest weight of the evidence because the claimant's last "off work" note from Dr. Raducan was dated February 13, 2003, five months prior to the hearing.

An employee is temporarily totally disabled from the time that an injury incapacitates him from work until such time as he is as far recovered or restored as the permanent character of his injury will permit. *Archer Daniels Midland Co. v. Industrial Comm'n*, 138 Ill. 2d 107, 118, 561 N.E.2d 623 (1990). The time during which a claimant is temporarily totally disabled is a question of fact to be resolved by the Commission, and the Commission's decision will not be disturbed unless it is against the manifest weight of the evidence. *Choi v. Industrial Comm'n*, 182 Ill. 2d 387, 398, 695 N.E.2d 862 (1998).

Here, Dr. Raducan wrote in his notes dated January 31, 2003, that the claimant exhibited less than 50% range of motion in his left wrist, the fingers on his left hand were stiff, and he could not make a fist. The claimant's left shoulder rotation was functional, but with a deficit of internal rotation. In a functional capacity evaluation on February 6, 2003, the claimant demonstrated a severe range of motion limitation, as well as weakness of his left shoulder, wrist, and fingers. The physical therapist opined that the claimant could not perform the essential functions of a bricklayer's helper.

In Dr. Raducan's notes dated February 13, 2003, he found that one of the major limitations of the claimant's work capacity was the limited range of motion of his left shoulder. He suggested that the claimant undergo a surgical manipulation under general anesthesia, followed by aggressive range of motion physical therapy. Dr. Raducan also issued an "off work" slip at that time. At the July 22, 2003, hearing, the claimant testified that he was unable to close his left fist and that his left wrist hurt. He stated that he could not lift his left arm or bend it toward his back. The claimant also complained of a pinching pain in his left leg while walking.

Where the Commission's decision is supported by competent evidence, its finding of fact is not against the manifest weight of the evidence. *Benson v. Industrial Comm'n*, 91 Ill. 2d 445, 450, 440 N.E.2d 90 (1982). Based on the evidence presented at the arbitration hearing, we cannot say that the Commission's decision to award the claimant TTD benefits from June 11, 2002, through July 22, 2003, is against the manifest weight of the record.

Based upon the foregoing analysis, we affirm the judgment of the circuit court which confirmed the Commission's decision and remand to the Commission for further proceedings.

Affirmed and remanded.

McCULLOUGH, P.J., and CALLUM, HOLDRIDGE, and GOLD-ENHERSH, JJ., concur.