# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Fraternal Order of Police, Chicago Lodge No. 7 v. Illinois Labor Relations Board**, 2011 IL
App (1st) 103215

---

| | |
|---|---|
| Appellate Court Caption | FRATERNAL ORDER OF POLICE, CHICAGO LODGE No. 7, Petitioner, v. ILLINOIS LABOR RELATIONS BOARD, LOCAL PANEL, and THE CITY OF CHICAGO, Respondents. |
| District & No. | First District, First Division<br>Docket No. 1-10-3215 |
| Filed | November 21, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The finding of the Illinois Labor Relations Board, Local Panel, that the City of Chicago did not commit an unfair labor practice by failing to bargain over the city's consolidation of its training districts for probationary police officers was affirmed where the record supported the Board's finding that the police union waived its claim that the city did not bargain over the effects of the consolidation decision. |
| Decision Under Review | Petition for review of order of Illinois Labor Relations Board, Local Panel, No. L-CA-09-009. |
| Judgment | Confirmed. |

Counsel on
Appeal

Paul D. Geiger, of Fraternal Order of Police, of Chicago, for petitioner.

Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and J. Mark Powell, Assistant Corporation Counsel, of counsel), for respondent City of Chicago.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Sharon A. Purcell and Brian F. Barov, Assistant Attorneys General, of counsel), for respondent Illinois Labor Relations Board, Local Panel.

Panel

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.

Justices Karnezis and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1     The petitioner, the Fraternal Order of Police, Chicago Lodge No. 7 (Lodge), seeks review of an order of the Illinois Labor Relations Board, Local Panel (Board), finding that the City of Chicago (City) did not commit an unfair labor practice by failing to bargain over its consolidation of training districts for probationary police officers. On appeal, the Lodge contends that the Board erred in concluding that the consolidation decision was not a mandatory subject of bargaining and in finding that the Lodge had waived the claim that the City violated its duty to bargain over the effects of the consolidation decision. For the reasons that follow, we affirm the Board's decision in all respects.

¶ 2     The record establishes the following relevant facts. On September 9, 2008, the Lodge filed an unfair labor practice charge with the Board, claiming that the City had violated sections 10(a)(1) and 10(a)(4) of the Illinois Public Labor Relations Act (Act) (5 ILCS 315/10(a)(1), (a)(4) (West 2010)) by unilaterally deciding to consolidate the 18 existing police officer training districts[1] into 6 training districts and by engaging in direct negotiations with two field training officers (FTOs). The charge further asserted that FTOs are police officers who are assigned by the Chicago police department (Department) to train and evaluate probationary police officers and who receive higher compensation for performing such training. FTOs are members of the bargaining unit represented by the Lodge, but the

_____

[1]Although the Lodge asserted that there were 12 training districts prior to the consolidation, the evidence presented at the administrative hearing established that there were 18 training districts at the time the consolidation decision was made.

probationary police officers are not included in the bargaining unit until they have completed the first 18 months of their employment with the Department.

¶ 3        Following an investigation pursuant to section 11(a) of the Act (5 ILCS 315/11(a) (West 2010)), the executive director of the Board determined that the charge involved dispositive issues of law or fact and issued a complaint for hearing before an administrative law judge (ALJ). The complaint alleged that, during the negotiations for a successor collective bargaining agreement, the Lodge made various proposals relating to FTOs, including expansion of the field training districts to all 25 police districts in the City, and that the City had rejected the expansion proposal at a joint bargaining subcommittee meeting in December 2007.[2] In addition, the complaint alleged that, at a meeting on June 17, 2008, attended by certain members of the Lodge and by Police Superintendent Jody Weis and other members of the Department, the parties agreed that future negotiations would take place regarding the Lodge's expansion proposal. The complaint further asserted that, on September 4, 2008, the City announced the consolidation of field training districts, which reduced the number of such districts from 18 to 6, without further negotiations with or prior notice to the Lodge and that FTOs not currently assigned to 1 of the 6 training districts would have to bid for one or resign their FTO positions and lose the additional FTO compensation.

¶ 4        The complaint claimed that the transfer of FTO positions involves wages, hours, or working conditions and was a mandatory subject of bargaining. It also claimed that the City had violated the Act by failing to bargain in good faith over the consolidation decision and the Lodge's proposal to expand training districts and by engaging in direct dealing with Lodge members. The City answered the complaint, and the parties filed statements of uncontested material facts, in which they agreed that the transfer of FTO positions into new districts involves wages, hours, or working conditions.

¶ 5        During his opening statement before the ALJ, counsel for the Lodge stated that "[t]he Department also required FTOs who are not assigned to these [consolidated] training districts to transfer to those districts or to resign their FTO position and forfeit the extra pay and overtime opportunities that were attendant to that position. The Department admits that the transfer of FTO officers into new districts involves wages, hours, and working conditions. These changes in the working conditions of the FTOs were implemented without bargaining with the Lodge. The Department violated the [A]ct when it engaged in direct dealing with officers represented by the Lodge, and then the Department did not negotiate in good faith with the Lodge. The evidence will establish these violations ... ."

¶ 6        The Lodge called FTO Richard Aguilar, FTO Richard Daly, and Lodge president Mark Donahue as witnesses. The testimony of these witnesses indicated that FTOs are responsible for teaching fundamental policing skills to new recruits, who train for 4 weeks with an FTO at each different watch, for a total of 12 weeks of training. FTO positions are filled through a formal application and testing process, and FTOs earn a higher rate of pay than that received by other police officers, regardless of whether they actually have a probationary

---

[2]Though the existing collective bargaining agreement expired on June 30, 2007, by its terms, it continued in effect while the parties negotiated a successor agreement.

police officer to train at any given time, and they also receive additional compensation for various training-related activities.

¶ 7      On June 6, 2007, the Lodge submitted, in the successor negotiations, its proposal to expand FTO assignments to all police districts and to increase the rate of FTOs' compensation. The purpose of this proposal was to improve the working conditions of FTOs and to attract more officers to apply for such positions, though at least one training district had an excess number of FTOs with no recruits to train. The City rejected this proposal in December 2007.

¶ 8      There were two meetings during the summer of 2008 at which the FTO program was discussed. On June 17, 2008, several Lodge members, including those in leadership positions, attended a meeting to get acquainted with Superintendent Weis and his staff, all of whom had recently been appointed. At some point during this meeting, Superintendent Weis mentioned that the Department was contemplating making some changes to the FTO program and that he intended to ask some of the more senior FTOs for their input. Though Superintendent Weis indicated that Aguilar, who had been an FTO for more than 20 years, would be included in any conversations regarding changes to the program, Aguilar was never contacted about that issue. A subsequent meeting was held on July 23, 2008, between several supervisory police officers and FTOs Richard Daly and Shawn Hallinan. The purpose of this meeting was to solicit input from the FTOs about how to improve the field training program, and Daly was directed by his watch commander to attend the meeting.

¶ 9      On September 3, 2008, Superintendent Weis issued a bulletin announcing the consolidation of field training districts as a "first step" in the process of improving the FTO program. The bulletin stated that recruits would be trained in six particular districts, representing all of the Department's five police areas, and that the selected districts "have broad-scale policing issues ranging from crime, diverse communities, schools, business districts, and other service issues." The bulletin explained that, as a result of this change, recruits will be trained in "some of the busiest districts in the City, and will be well prepared to work in any district at the successful completion of their training." The bulletin further explained that consolidation was "necessary to ensure that a high concentration of [FTOs] are available in training districts, providing recruits with greater interaction and more focused instruction with [FTOs]." The following day, the Department issued a memorandum detailing the two-level bidding process by which FTOs who were not already assigned to one of the consolidated districts would move into one. Those FTOs who were not successful bidders or who did not bid would be reassigned to a new district, and any FTOs who wanted to remain in their existing district could avoid reassignment by resigning as an FTO. The "current watch" of any FTOs who transferred would be honored in the new training district until the end of the year, after which, transferring FTOs would be assigned to all three watches. Following the consolidation, approximately 30 FTOs resigned their field training positions.

¶ 10      The City called Deputy Superintendent Peter Brust, Lieutenant Michael Dejanovich, Commander Donald O'Neill, Lieutenant Jeff Mappa, and Michael Masters, the superintendent's chief of staff, as witnesses. The testimony of these witnesses indicated that, at the "get acquainted" meeting in June 2008, members of the Lodge and Superintendent

Weis and his staff generally discussed issues related to the Department, including the improvement of the FTO program, but no specific contract proposals affecting FTOs were addressed. Superintendent Weis had established an internal committee to study ways to strengthen and improve the field training program, but this informal group was not connected to the negotiations for a successor collective bargaining agreement. In July 2008, the committee conducted a meeting, which was also attended by Daly and Hallinan. This meeting was informational and provided an opportunity for FTOs Hallinan and Daly to express their views on the field training program. No consensus was reached as to how to change the FTO program, and the July 2008 meeting was the only occasion on which the internal committee received input from FTOs regarding the program before the consolidation was announced. The consolidation did not reduce the total number of available FTO positions, but it concentrated the assignment of those FTO positions into 6, rather than 18, designated districts.

¶ 11　　　During the testimony of Commander Donald O'Neill, the Lodge's attorney objected to the City's examination regarding how the Department would implement the consolidation decision, claiming that this line of questioning was not relevant to the charge at issue. Counsel for the City responded that the testimony related to "the issue of impact bargaining" because it showed that the City did have discussions with the Lodge about the "impact of the consolidation." She further indicated that, based on comments made during the Lodge's opening statement, she was under the impression that "what happened after the consolidation" was at issue, in addition to the decision to consolidate itself. Counsel for the City stated that, if her impression was incorrect, she would "cease this line of questioning." The ALJ then expressed her understanding that the Lodge's charge was based on the City's refusal to bargain over the consolidation of the field training districts, but the Lodge had not alleged that the City refused to bargain about the impact of that decision. When the ALJ inquired whether the charge was based on the refusal to bargain about the consolidation and whether "the discussion about the impact goes towards [the] requested remedy," the Lodge's attorney agreed that this characterization was correct, and counsel for the City stated that "this line of questioning goes towards *** the remedy that's being requested" by the Lodge.

¶ 12　　　The ALJ indicated that the Lodge's objection would be sustained "to the extent this testimony is being offered that [the City] bargained about the impact." After further discussion, counsel for the City confirmed that the challenged testimony was offered as evidence of bargaining over the impact, and the Lodge's attorney reasserted his objection based on relevancy to the charge alleged.

¶ 13　　　Upon consideration of the evidence presented and posthearing briefing, the ALJ issued a recommended decision, finding that the City violated the Act by refusing to bargain and failing to bargain in good faith with the Lodge over the decision to consolidate training districts and over its effects on FTOs. The ALJ found, however, that the City did not engage in direct dealing with Lodge members.

¶ 14　　　The City filed exceptions to the ALJ's recommended decision, arguing, *inter alia*, that the determination of where to provide the best training for probationary police officers is related to the Department's organizational structure and, as such, is a subject of inherent managerial authority under the Act. The City further argued that the burden bargaining would

impose on managerial authority would outweigh the corresponding benefits to the decision-making process since the reasons for consolidation were not amendable to bargaining. In addition, the City argued that whether it was obligated to bargain over the impact of consolidation was not properly before the ALJ because it was not raised in the complaint. The Lodge filed a response to the City's exceptions.

¶ 15    After hearing oral argument, the Board rejected the ALJ's recommended decision and dismissed the complaint. Applying the three-part test articulated in *Central City Education Ass'n, IEA/NEA v. Illinois Educational Labor Relations Board*, 149 Ill. 2d 496, 599 N.E.2d 892 (1992), the Board found that the consolidation decision concerned wages, hours, and terms of employment of FTOs, but the means of improving the quality of training probationary employees is a matter of inherent managerial authority. The Board concluded that the burden on the City's managerial authority to determine how best to train its new hires outweighs the benefits bargaining would provide to the decision-making process. In reaching this conclusion, the Board observed that, although bargaining might have resulted in suggestions as to alternative means of improving field training, the burden on the City's managerial authority to develop training policy, particularly how best to train new recruits outside the bargaining unit, exceeded any arguable benefits of bargaining.

¶ 16    In addressing the question of whether the City had violated its duty to bargain over the effects of the consolidation decision, the Board determined that this issue was not properly before the ALJ, where it had not been raised in the charge or in the executive director's complaint for hearing, no motion to amend the complaint was ever made, and the Lodge did not identify the issue as a claimed violation in its opening statement. Based on these circumstances, the Board found that the record did not "allow for meaningful consideration" of an effects-bargaining claim and rejected the ALJ's determination that the City violated a duty to bargain over the effects of the consolidation decision.

¶ 17    The Lodge thereafter petitioned this court for direct review of the Board's decision. See 5 ILCS 315/11(e) (West 2010); 735 ILCS 5/3-113 (West 2010); Ill. S. Ct. R. 335 (eff. Feb. 1, 1994).

¶ 18    In an appeal from a final administrative decision, the applicable standard of review depends upon whether the question presented is a question of fact, a question of law, or a mixed question of law and fact. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204, 692 N.E.2d 295 (1998). Rulings on questions of fact will be reversed only if they are against the manifest weight of the evidence, while questions of law are reviewed *de novo*. *City of Belvidere*, 181 Ill. 2d at 204-05. Where, as here, the question presented involves a mixed question of law and fact, the clearly erroneous standard is applied. *Board of Trustees of the University of Illinois v. Illinois Labor Relations Board*, 224 Ill. 2d 88, 97, 862 N.E.2d 944 (2007) (citing *City of Belvidere*, 181 Ill. 2d at 205). The clearly erroneous standard accords substantial deference to the administrative decision, in acknowledgment of the agency's experience and expertise in resolving matters within its purview. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 394-95, 763 N.E.2d 272 (2001); see also *Central City*, 149 Ill. 2d at 523. An administrative decision "will be deemed [to be] 'clearly erroneous' only where the reviewing court *** is 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service,*

*Inc.*, 198 Ill. 2d at 395 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)); see also *Board of Trustees*, 224 Ill. 2d at 97-98.

¶ 19 The Lodge initially argues that the Board clearly erred in finding that the decision to consolidate the field training districts was not a mandatory subject of bargaining. We disagree.

¶ 20 Section 4 of the Act requires public employers to bargain collectively with regard to policy matters directly affecting wages, hours and terms and conditions of employment as well as the impact thereon. 5 ILCS 315/4 (West 2010). Section 7 of the Act states that a public employer and the exclusive representative have the authority and the duty "to bargain collectively," which means the performance of the mutual obligation of the public employer and the representative of the public employees to meet at reasonable times, including meetings in advance of the budget-making process, and to negotiate in good faith with respect to wages, hours, and other conditions of employment. 5 ILCS 315/7 (West 2010). Sections 10(a)(1) and 10(a)(4) provide that it is an unfair labor practice for an employer or its agents to interfere with, restrain or coerce public employees in the exercise of the rights guaranteed by the Act or to refuse to bargain collectively in good faith with a labor organization which is the exclusive representative of public employees in an appropriate unit, including, but not limited to, the discussing of grievances with the exclusive representative. 5 ILCS 315/10(a)(1), (a)(4) (West 2010).

¶ 21 In *Central City*, our supreme court articulated a three-part test for determining whether a particular issue is a mandatory subject of bargaining. See *Central City*, 149 Ill. 2d at 523. The first prong of the test concerns whether the matter is one of "wages, hours and terms and conditions of employment." *Central City*, 149 Ill. 2d at 523. If it is not, then the employer has no duty to bargain over the matter. *Central City*, 149 Ill. 2d at 523. If it is, then the second part of the test requires a determination of whether the matter is also one of "inherent managerial authority." *Central City*, 149 Ill. 2d at 523. If it is not, then the inquiry ends because the matter is a mandatory subject of bargaining. *Central City*, 149 Ill. 2d at 523. If the matter is one of "inherent managerial authority," then the benefits that bargaining will have on the decision-making process must be balanced against the burdens that bargaining would impose on the employer's authority. *Central City*, 149 Ill. 2d at 523. The determination of whether specific issues are mandatory subjects of bargaining is best left to the Board, which has the knowledge and experience to balance the equities in a given case. See *Central City*, 149 Ill. 2d at 522-23.

¶ 22 In this case, the parties stipulated that the decision to consolidate the field training districts is a matter involving wages, hours and terms and conditions of employment. In accordance with that stipulation, the Board found that the first step of the *Central City* test has been satisfied.

¶ 23 With regard to the second step of the *Central City* analysis, the Board was obligated to consider whether the consolidation decision involves a matter of inherent managerial authority. Section 4 of the Act states, in relevant part, as follows:

"Employers shall not be required to bargain over matters of inherent managerial policy, which shall include such areas of discretion or policy as the functions of the employer,

standards of services, its overall budget, the organizational structure and selection of new employees, examination techniques and direction of employees." 5 ILCS 315/4 (West 2010).

This statutory list is not exhaustive, but it establishes the characteristics of managerial rights that are not subject to mandatory bargaining. *Board of Trustees*, 224 Ill. 2d at 104. The supreme court has recognized that "inherent managerial authority" consists of "those matters residing at the core of entrepreneurial control. [Citation.]" (Internal quotation marks omitted). *Board of Trustees*, 224 Ill. 2d at 97; see also *Central City*, 149 Ill. 2d at 518.

¶ 24    Here, the evidence presented at the hearing established that the consolidation and realignment of field training districts was designed to improve the quality of training for probationary employees by ensuring that new police officers are better able to handle all types of the policing situations that they are likely to encounter. As such, the consolidation decision fell within the core of the City's right to control its operational needs regarding the most effective and efficient way to enhance and broaden the spectrum of training new recruits. See *Board of Trustees*, 224 Ill. 2d at 104; see also *Metropolitan Alliance of Police, Bensenville Police Chapter #165*, 19 PERI ¶ 119 (ILRB State Panel 2003) (in which the Board recognized that the decision to cross-train police officers as firefighters and emergency medical technicians concerns a matter of inherent managerial authority). The subsequent reassignment or resignation of FTOs constituted an effect of the consolidation decision and did not bring that decision within the provisions of the collective bargaining agreement governing the compensation of FTOs and the seniority-based bidding procedure under which such assignments are made. Thus, the record supported the Board's determination that the means of improving the quality of training of probationary employees is a matter of inherent managerial authority. In light of this evidence, we conclude that the Board did not clearly err in finding that the consolidation decision fell within the City's inherent managerial authority.

¶ 25    Having found that the first two steps in the *Central City* test are satisfied, the Board balanced the benefits that bargaining would have on the decision-making process against the burdens that bargaining would impose upon the City's managerial authority. The Board noted that the issue of where probationary employees receive training is a component of how to provide such training to those employees and concluded that the benefits of bargaining on the process of deciding the optimal method and means of training new officers were outweighed by the burdens that bargaining would impose on the City's inherent managerial authority. Contrary to the Lodge's argument that it could have offered proposals aimed at eliminating the reassignment and resignation of existing FTOs, we agree with the Board and the City that any such proposals would relate only to the effect of the consolidation decision, rather than the consolidation itself. Also, though the Lodge submitted a proposal to expand the number of training districts to all 25 Department districts prior to the consolidation, the purpose of this proposal was to further the interests of the FTOs, as opposed to improve the training of new recruits. Based on this record, we perceive no clear error in the Board's balancing of the effect of bargaining on the decision-making process.

¶ 26    The Lodge further complains that the Board did not give specific reasons for finding that the burdens on the City's inherent managerial control outweigh the benefits of bargaining on the decision-making process. We note, however, that an administrative agency is not required

to articulate each and every facet of its deliberative process as long as the reasoning underlying the agency's decision may be discerned. See generally *Siddiqui v. Department of Professional Regulation*, 307 Ill. App. 3d 753, 759, 718 N.E.2d 217 (1999); see also *J.S. Masonry, Inc. v. Industrial Comm'n*, 369 Ill. App. 3d 591, 598, 861 N.E.2d 202 (2006). Here, the Board's decision sufficiently articulated the considerations underlying its balancing of the relative benefits and burdens of bargaining, and we cannot say that its finding in this regard is clearly erroneous.

¶ 27    Finally, the Lodge claims that the Board erred in finding that it had waived the claim that the City violated its duty to bargain over the effects of the realignment decision. Again, we disagree.

¶ 28    Section 11(a) of the Act specifically provides that, where a complaint for hearing has been issued by the Board, or its designated officer, "such complaint may be amended by the *** hearing officer conducting the hearing for the Board in his discretion at any time prior to the issuance of an order based thereon." 5 ILCS 315/11(a) (West 2010).

¶ 29    In this case, neither the charge filed by the Lodge nor the complaint for hearing filed by the executive director of the Board alleged that the City had violated the Act by failing to bargain over the effects of the consolidation decision, and the Lodge never requested that the complaint be amended to include such a claim. In challenging the finding of waiver, the Lodge relies primarily on the comments made by its attorney during his opening statement before the ALJ. As noted above, counsel for the Lodge made reference to the fact that FTOs who are not assigned to the consolidated training districts were required to transfer to those districts or to resign their FTO positions and that the transfer of FTO officers into new districts involves wages, hours, and working conditions. Counsel also stated that the "changes in the working conditions of the FTOs were implemented without bargaining with the Lodge. *** The evidence will establish these violations ... ." Yet, when counsel for the City sought to elicit testimony from Commander O'Neill to establish that it had bargained over the effects of the consolidation decision, the Lodge's attorney objected on the ground that such testimony was irrelevant to the charge at issue.

¶ 30    Thus, the record affirmatively demonstrates that the Lodge sought to exclude certain testimony based on the fact that the issue of effects bargaining was not pending before the ALJ. Indeed, during a protracted discussion of that very point, counsel for the City specifically referenced the Lodge's opening statement as the source of her confusion on the relevance of effects bargaining, and the Lodge's attorney reasserted his relevancy objection. Consequently, to the extent that comments made during the Lodge's opening statement could be interpreted to indicate that effects bargaining was at issue, that position was subsequently disavowed at the evidentiary portion of the hearing. Based on this record, we cannot say that the Board clearly erred in finding that the Lodge had waived the claim that the City violated the Act by failing to bargain over the effects of the consolidation decision.

¶ 31    For the foregoing reasons, the decision of the Board is confirmed.

¶ 32    Confirmed.